FILED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

2011 MAY 24  P 4: 17

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

United States of America, *ex rel.*

Lyle Beauchamp
541 Fishel Creek Road
Musselshell, MT 59059

and

Warren Shepherd
5680 S. Fox Hollow Avenue
Springfield, MO 65810-2325

        Plaintiffs,

v.

U.S. Training Center, Inc. ("USTC")
850 Puddin Ridge Road
Moyock, NC 27958

        Defendant.

Civil Action No. 1:11-cv-371
(JCC/JFA)

**JURY DEMAND**

~~FILED UNDER SEAL~~ Unsealed as of 7/14/11 per JCC.

1

## FIRST AMENDED COMPLAINT

1. This lawsuit alleges that Defendant has defrauded the United States from June 2009 to the present by repeatedly billing the U.S. State Department for (a) contractors' services in positions that they did not hold, in order to avoid contractual penalties for inadequate staffing; and (b) for the worthless services of contractors who had not passed weapons qualifications, who had failed a required drug test or were under the influence of alcohol, or whose biographies had been falsified. This lawsuit also alleges that Defendant defrauded the United States from June 2009 to the present by billing the U.S. Department of State for personnel gear that they did not actually issue to the men in country. This lawsuit also alleges that Defendant terminated Mr. Beauchamp for his participation in a Federal False Claims Act lawsuit.

2. Relators have direct and independent knowledge of Defendant's fraud. They bring this action on behalf of the United States under the *qui tam* provision of the Federal False Claims Act, 31 U.S.C. §3729 *et. seq.*, as amended ("The Act.")

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. §3732, which specifically confers jurisdiction on this Court of actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

4. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. §3732(a), which provides that "[a]ny action under § 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in which any act proscribed by § 3729 occurred."

5.    As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), Relators gave the United States personal statements setting forth material evidence and information related to this Complaint in advance of filing this action.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(a) in that Defendant is registered and does business within this judicial district.

7.    This action is filed under seal in compliance with the False Claim Act requirements.

## PARTIES

8.    Relator Lyle Beauchamp resides at 541 Fishel Creek Road, Musselshell, MT 59059. He has deployed to Iraq and Afghanistan under Defendant's contracts with the State Department since 2004. He has direct and personal knowledge relating to Defendant's fraudulent schemes.

9.    Relator Warren Shepherd resides at 5680 S. Fox Hollow Avenue, Springfield, MO 65810-2325. He has deployed to Iraq and Afghanistan under Defendant's contracts with the State Department since 2006. He has direct and personal knowledge relating toDefendant's fraudulent schemes.

10.    Defendant USTC (formerly Blackwater Worldwide Lodge and Training Center, Inc.) is the corporate entity that provided services pursuant to contracts with the State Department known as the WPPS contracts.

## FACTUAL ALLEGATIONS

11.    In June 2005, the State Department awarded USTC the Worldwide Protective Services Contract (known as WPPS II). Under this contract and the task orders issued thereunder, USTC was to provide security services in Iraq and Afghanistan, as well as operate a local program management office in the Washington, DC area.

## FALSE BILLING OF DUTIES PERFORMED

12. From June 2009 to the present, USTC intentionally and knowingly submitted materially false claims to the United States on a monthly basis. USTC made a series of false statements and certifications regarding the positions being performed, and the qualifications of the deployed personnel. The State Department substantially overpaid the company as a result of these materially false claims.

13. The WPPS II contract imposes penalties for failing to supply the required number of security personnel. In order to avoid these penalties, USTC made false statements about what position personnel were actually performing.

14. Relator Shepherd has personal knowledge of instances in which USTC falsely billed the State Department for his services.

    a. USTC falsely billed the State Department for Relator Shepherd's services as a Protective Security Specialist ("PSS") from June 1 to June 6, 2010. He was actually working as a Shift Leader ("SL") on those dates.

    b. USTC falsely billed the State Department for Relator Shepherd's services as a SL when he was actually on R&R from July 20, 2010 to August 22, 2010 and again from October 27, 2010 to November 29, 2010.

    c. USTC falsely billed the State Department for Relator Shepherd's services as a SL for Team 8 in January 2011. In fact, Relator Shepherd was working as a PSS for Team 3 at that time.

15. Relator Beauchamp has personal knowledge of instances in which USTC falsely billed the State Department for his services.

    a. From June 26, 2009 to June 30, 2009, Relator Beauchamp was billed as an Operations Security Specialist ("OSS") (a radio dispatcher) at the Tactical Operations Center while he was actually working as a Designated Defensive Marksman ("DDM").

    b. From May 1 to May 3, 2010, and from May 22 to May 25, 2010, Relator Beauchamp was billed as an Operations Chief, a supervisory position at the Tactical Operations Center. Relator Beauchamp was actually working as a DDM on those dates.

    c. From May 4 to May 14, 2010, Relator Beauchamp was billed as an OSS while actually working as a DDM.

16. Relators are also aware of USTC falsely billing the State Department for services performed by other personnel.

    a. Brad Glisson was billed as a Defensive Marksman in April, May, and June 2009, although he was a detail leader who worked in an office.

    b. From June 2009, John Little was billed as Deputy Leader, Detail Leader or Project Manager, but both positions were already filled. He never went on a mission.

    c. On or about October 13, 2009, Wade Wills was billed as a DDM for the Anvil 1 team. In fact, he was working in headquarters to verify other contractors' biographies. On or about December 23, 2009, Wills was working at the Tactical Operations Center, although he was being billed as the only DDM for the Anvil 1 team. The Anvil 1 team was operating without any DDMs, which was contrary to contractual requirements.

5

d. On or about November 23, 2009 onward, Timothy Powers was billed as a DDM and as a SL. In fact, he did not run missions; rather, he worked in the company camp. Documents dated March 10, 2011 reflect that Mr. Powers was shown as a DDM on Team 3 when in fact he had not worked on Team 3 since at least January 2011.

e. On or about November 23, 2009, Operations Chief Troy Anderson admitted that he was concerned about USTC management placing personnel in positions and billing the Department of State for other positions. Anderson admitted that the company had falsely billed for his, Timothy Powers', Wade Wills', and another Operation Chief's services.

f. On or about April 15, 2010 Kirkland Gregor admitted that Tim Knowles had not been approved by the Department of State as an Operations Chief, but he had been working as one.

g. In late summer 2010, USTC billed the State Department for Kenny Hankins' services as a DDM. In fact Hankins was serving as the SL for Anvil 2.

h. On or about October 1, 2010, Rich Richter, the Hammer 4 SL, admitted that he had been paid as an Operations Chief (even though his bio was not approved for that position) for thirty days and numerous days as an OSS, when in fact he was working on a PSD (Personal Security Detail) team in the field.

i. On or about January 14, 2011, Relator Shepherd was informed that Deputy Detail Leader Thomas Koch and Team 8 Shift Leader Michael Puppolo were being moved to positions as DDMs because of personnel shortages at those positions. However, Koch did not work as a DDM; he continued to work in headquarters.

j. On or about March 9, 2011, Frank Liles, a Shift Leader from Team 4, admitted that Patrick Houghteling from Team 4 was filling or had been filling a SL position on Team 4. He was not approved by the State Department for that position. Mr. Liles also admitted that Steve Cardella from Team 8 was filling an SL position since January 2, 2011. He was not approved as a SL by the State Department either.

k. On or about March 22, 2011, Paul Houghteling was billed as a Shift Leader on Hammer, even though he was not approved for that position.

l. On or about March 31, 2011, Duane Xanders was billed on the WPPS II contract, even though he was not in Afghanistan and he was scheduled to go to Israel.

m. USTC billed the State Department for Paul Ellis's services as a SL, when Ellis was actually working as a PSS. On another occasion, USTC falsely billed the State Department for Ellis's services as Operations Chief, when Ellis was actually working as a SL. The person actually working as the Operations Chief on those dates was Tim Zapata, who was not qualified or approved by the State Department for that position.

n. USTC falsely billed the State Department for Steve McKenzie's services for at least seven months as a DDM, when he was actually working as a SL.

o. Ernest Davis (whose call sign was "Moonshine") was assigned to Hammer 7 as a PSS on the musters, but in fact he worked at the USTC Camp, did not perform missions with Hammer 7, and did not attend Hammer 7 meetings.

p. Matthew Denny was supposed to be a firearms instructor but he was used to fill other positions so that USTC could avoid fines.

q. USTC billed the State Department for Tom Koch's and Michael Puppolo's services as DDMs, while they actually served in leadership positions in the Kabul camp and did not go on missions.

r. USTC billed Jeremy Miller as a SL even though he is not qualified to serve as a Shift Leader by the Department of State. Jeremy Miller does not even meet the basic requirements to be a PSS. Mr. Miller is also a firearms instructor for USTC, and he does not meet those requirements either. Thomas Koch, Kyle Huttenlocker and Danny West are known to falsify the biographies of unqualified personnel so that they are approved.

s. USTC billed James Voorhees as a Shift Leader from January 2011 to May 2011, even though he was not approved by the State Department as a Shift Leader.

17. USTC personnel involved in the false billing include, but are not limited to, Thomas Koch, Kyle Huttenlocker, John Little, Danny West, John Powder, Brad Glisson, Kurt Scheuermann, James Overton, Tracy West, and Bob Nesall.

18. Reasonable discovery will establish the identities of other USTC personnel who engaged in the false billing scheme, including corporate management in Moyock and McLean.

19. Reasonable discovery will establish that Defendant engaged in a systemic pattern of changing job titles without regard to reality in order to maximize profits and avoid the contractual penalties.

20. In November 2010, Relator Beauchamp informed USTC executive Anthony Valusek about the widespread false billing in Kabul by telephone and e-mail, giving numerous specific examples. Valusek told Beauchamp that there was an investigation going on, and asked him not to speak about these matters except to company lawyers.

21. Valusek took no effective action to halt the fraud or report it to the State Department.

22. To prevent discovery of the fraudulent billing, USTC altered the Relators', Paul Ellis's, and other contractors' payroll records in December 2010 and January 2011.

## DRUG TESTS

23. To avoid paying financial penalties for understaffing and in addition to falsely reporting contractors' positions, USTC continues to employ contractors known to have failed drug tests. USTC management warns employees in advance of drug tests.

24. In September 2009, 16 USTC contractors failed a drug test, and were given up to three more tries to test clean.

25. In November 2009, Project Manager Kurt Scheuermann briefed USTC personnel about an upcoming urine test, and advised them against taking growth hormones or supplements in advance of the test.

26. In the summer of 2010, 32 USTC contractors failed a drug test, but none of them were fired. Three of them were Jason Cronin, Troy Davis, and Rick Richter.

27. In January 2011, Timothy Powers admitted that he knew of candidates who tested positive for drugs and were allowed to retest up to six times until they tested negative.

## WEAPONS QUALIFICATIONS

28. USTC routinely falsifies weapons qualifications of independent contractors for submission to the Department of State. USTC routinely failed to score the independent contractors on the M-240 and M-249 in Iraq and Afghanistan.

29. Neither Mr. Beauchamp nor Mr. Shepherd were ever scored on these weapons during their deployments in Afghanistan. Mr. Beauchamp was also never scored on these weapons in Iraq.

30. Weapons score cards for both Mr. Beauchamp and Mr. Shepherd indicate that they were scored on the M-240s and M-249s when they were not.

31. Mr. Beauchamp's score cards from October 4, 2010, April 3, 2010, July 23, 2010, January 27, 2011, April 1, 2011 and April 8, 2011 are fraudulent.

32. Mr. Shepherd's score card from April 4, 2011 is fraudulent.

33. USTC certified that they and other independent contractors were qualified to shoot M-240s and M-249s.

34. USTC also fraudulently billed their services to the Department of State, as none of the independent contractors was qualified to shoot M-240s and M-249s.

### PERSONNEL GEAR

35. In addition to falsely reporting contractors' positions, employing individuals who have engaged in illegal activities, and falsifying weapons qualifications, USTC has also billed the U.S. government for gear issued to personnel under the WPPS II contract, but did not provide that gear to the personnel. Reasonable discovery will show that this billing fraud occurred throughout the time period at issue in this lawsuit.

### TERMINATION

36. Lyle Beauchamp worked for the company as an independent contractor for over six and a half years with no complaints filed against him. As a result of his participation in a *qui tam* lawsuit (*U.S. ex rel Davis v. Erik Prince, et al*), of which Defendant was aware, Mr. Beauchamp was terminated as retaliation for his involvement.

### COUNT ONE

### FALSE CLAIMS

37. Relators allege and incorporate by reference the preceding allegations.

10

38.   This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §3729-32, as amended.

39.   Through the acts described above, Defendant knowingly presented and caused to be presented to the United States false and fraudulent claims, records, and statements in order to obtain payment for services not rendered pursuant to the terms of the contracts under which Defendant operated.

40.   Through the acts described above and otherwise, Defendant knowingly made, used, and caused to be made and used false records and statements. Defendant made these false records and statements in order to obtain funds to which Defendant was not entitled from the United States.

41.   Through the acts described above and otherwise, Defendant knowingly made, used, and caused to be made or used material false records and statements to conceal, avoid, and decrease Defendant's obligation to repay money to the United States that Defendant improperly and fraudulently received. Defendant also failed to disclose to the United States material facts that would have resulted in the United States' request for substantial repayments.

42.   The United States, unaware of the falsity of the records, statements, and claims made or submitted by Defendant, paid and continues to pay Defendant for claims that would not be paid if the truth were known.

43.   The United States, unaware of the falsity of the records, statements, and claims made or submitted by Defendant – or of its failure to disclose material facts which would have reduced government obligations – has not recovered funds that would have been recovered otherwise.

44.   By reason of Defendant's false records, statements, claims, and omissions, the State Department paid Defendant more than it should have paid.

## COUNT TWO

## FALSE CLAIMS FOR WORTHLESS AND MISLABELED SERVICES

45. Relators allege and incorporate by reference the preceding allegations.

46. Defendant induced the State Department to pay for worthless services.

47. As set forth above, the State Department would not have paid for services of personnel retained despite failing drug tests.

48. Additionally, the State Department would not have paid for services of personnel whose biographies were falsified and who were not qualified to perform specific positions.

49. The State Department would also have not paid for services of personnel whose weapons qualifications were falsified.

50. Through the acts described above, Defendant knowingly presented and caused to be presented to the United States false and fraudulent claims, records, and statements in order to obtain payment for services not rendered pursuant to the terms of the contracts under which Defendant operated.

51. Through the acts described above and otherwise, Defendant knowingly made, used, and caused to be made and used false records and statements. Defendant made these false records and statements in order to obtain funds to which Defendant was not entitled from the United States.

52. Through the acts described above and otherwise, Defendant knowingly made, used, and caused to be made or used material false records and statements to conceal, avoid, and decrease Defendant's obligation to repay money to the United States that Defendant improperly and fraudulently received.

53. The United States, unaware of the falsity of the records, statements, and claims made or submitted by Defendant paid and continues to pay Defendant for claims that would not be paid if the truth were known.

54. The United States, unaware of the falsity of the records, statements, and claims made or submitted by Defendant – or of its failure to disclose material facts which would have reduced government obligations – has not recovered funds that would have been recovered otherwise.

55. By reason of Defendant's false records, statements, claims, and omissions, the State Department paid more than it should have paid.

## COUNT THREE

## RETALIATORY TERMINATION

56. Relators allege and incorporate by reference the preceding allegations.

57. Relator Lyle Beauchamp participated in furtherance of a *qui tam* suit (*U.S. ex rel Davis v. Erik Prince, et al*).

58. Defendant was aware of Mr. Beauchamp's participation in the *Davis* lawsuit. Defendant asked Mr. Beauchamp if he was serving as a witness in the *Davis* lawsuit, to which Mr. Beauchamp answered yes, and Mr. Beauchamp's name appeared on a witness list to testify regarding fraudulent billing in the *Davis* lawsuit.

59. Defendant retaliated against Mr. Beauchamp and he was terminated as a direct result of his involvement in the *qui tam* lawsuit.

60. Retaliatory termination is a violation of 31 U.S.C. §3730(h).

## PRAYER FOR RELIEF

WHEREFORE, Relators pray for judgment against Defendant as follows:

A. That Defendant ceases and desists from violating 31 U.S.C. §3729 *et seq.*;

B. That the Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's actions, as well as a civil penalty in the maximum statutory amount against Defendant for each violation of 31 U.S.C. § 3729;

C. That Relators be awarded the maximum amount allowed pursuant to § 3730(d) of the Federal Civil False Claims act;

D. That Relators be awarded all costs and expenses incurred in bringing this action, including attorneys' fees; and

E. That the United States and Relators receive all such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relators hereby demand a trial by jury.

Date: May 24, 2011

Susan L. Burke (VA Bar No. 27769)
Counsel for Relators
BURKE PLLC
1000 Potomac Street, N.W.
Washington, DC 20007-1105
Telephone: (202) 386-9622
Facsimile: (202) 232-5513
sburke@burkepllc.com