**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA ex rel. Beauchamp and Shepherd, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil No. 1:11-cv-371 (TSE/TRJ) |
| Academi Training Center, Inc. ("ATC"), f/k/a U.S. Training Center, Inc. ("USTC"), ) ) ) | |
| Defendant. ) ) | |

**REPLY IN SUPPORT OF DEFENDANT ACADEMI'S
OMNIBUS MOTION TO DISMISS RELATORS' FRAUD
CLAIMS AND STAY RELATORS' RETALIATION CLAIMS**


Dated:  January 10, 2013

Respectfully submitted,

 /s/ David W. O'Brien
David W. O'Brien (VSB # 14924)
Richard L. Beizer (VSB # 02646)
Brian T. McLaughlin (VSB # 71258)

*Counsel for Defendant*

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
P:  202-624-2500
F:  202-628-5116
E:  dobrien@crowell.com
E:  rbeizer@crowell.com
E:  bmclaughlin@crowell.com

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

I.    THE FIRST-TO-FILE BAR PRECLUDES RELATORS' ALLEGATIONS.................2

      A.    *Davis* Was Sufficient to Put the Government on Notice of Relators'
            Weapons Allegations .................................................................................3

      B.    *Davis* Was Sufficient to Put the Government on Notice of Relators' Labor
            Allegations ..................................................................................................6

      C.    The *Davis* FCA Case Is a Pending Action...........................................9

II.   PUBLIC DISCLOSURE BARs Relators' claims..........................................................10

      A.    The Public Disclosure Bar Remains a Threshold Jurisdictional Inquiry............10

      B.    Relators' Weapons Allegations Have Been Publicly Disclosed and
            Relators Are Not Original Sources ....................................................12

            1.    Relators Cannot Qualify as Original Sources Because They Failed
                  to Voluntarily Provide Their Weapons Information to the
                  Government Before Filing Their First Amended Complaint.................17

            2.    Relators Lack Original Source Knowledge ............................................18

      C.    Relators' Labor Allegations Have Been Publicly Disclosed and Relators
            Are Not Original Sources....................................................................20

III.  RELATORS' CLAIMS ARE BARRED BY RULE 12(B)(6) AND RULE 9(B)..........22

      A.    Relators' "Did Not Properly Score" Allegation Fails to State a Claim .............22

      B.    Relators' "Did Not Properly Score" Claim Also Fails to Meet Rule 9(b)..........24

      C.    Relators' "Did Not Shoot" Allegation Fails to Meet Rule 9(b)..........................24

      D.    Relators' Labor Allegations Fail to Meet Rule 9(b) ...........................................25

      E.    The Reverse False Claims Allegation in Count III Must Be Dismissed.............25

IV.   RELATORS' RETALIATION CLAIMS MUST BE STAYED....................................27

      A.    Arbitrability Is for the Arbitrator to Decide.......................................................27

      B.    The Agreements' Arbitral Procedures Do Not Prevent Vindication of
            Statutory Rights, Nor Are They Unconscionable. ...............................................28

CONCLUSION..............................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006)..........................................................................................11

*Awuah v. Coverall N. Am., Inc.*,
  554 F.3d 7 (1st Cir. 2009)................................................................................27

*Bradford v Rockwell Semiconductor Sys., Inc.*,
  238 F.3d 549 (4th Cir. 2001) ...........................................................................30

*Brady v. Williams Capital Grp., L.P.*,
  64 A.D.3d 127, 878 N.Y.S.2d 693 (1st Dep't 2009) ...........................29, 30

*Campbell v. Redding Medical Center*,
  421 F.3d 817 (9th Cir. 2005) .............................................................................6

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
  507 F.3d 270 (4th Cir. 2007) ...........................................................................27

*Conroy v. Leone*,
  316 F. App'x 140 (3d Cir. 2009) .....................................................................20

*Contec Corp. v. Remote Solution Co.*,
  398 F.3d 205 (2d Cir. 2005)..............................................................................27

*Department of Air Force v. Rose*,
  425 U.S. 352 (1976).........................................................................................15

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*,
  461 F. App'x 630 (9th Cir. 2011) ....................................................................27

*Fallo v. High-Tech Inst.*,
  559 F.3d 874 (8th Cir. 2009) ...........................................................................27

*Fransmart, LLC v. Freshii Dev., LLC*,
  768 F. Supp. 2d 851 (E.D. Va. 2011) ..............................................................27

*Gannon v. Circuit City Stores, Inc.*,
  262 F.3d 677 (8th Cir. 2001) ...........................................................................28

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)......................................................................................27, 30

*Glaser v. Wound Care Consultants, Inc.,*
  570 F.3d 907 (7th Cir. 2009) ............................................................................12, 14

*Graham County Soil & Water Conservation District v. United States ex rel. Wilson,*
  130 S. Ct. 1396 (2010). .............................................................................................14

*Harrison v. Westinghouse Savannah River Co.,*
  176 F.3d 776 (4th Cir. 1999) ...................................................................................25

*Hays v. Hoffman,*
  325 F.3d 982 (8th Cir. 2003) ...................................................................................22

*Hooters of Am., Inc. v. Phillips,*
  173 F.3d 933 (4th Cir. 1999) ............................................................................29, 30

*In re Checking Account Overdraft Litig. MDL No. 2036,*
  485 F. App'x 403 (11th Cir. 2012) ..........................................................................29

*In re Checking Acct. Overdraft Litig MDL No. 2036,*
  685 F.3d 1269 (11th Cir. 2012) ........................................................................28, 30

*In re Cotton Yarn Antitrust Litig.,*
  505 F.3d 274 (4th Cir. 2007) ............................................................................28, 30

*Ingle v. Circuit City Stores, Inc.,*
  328 F.3d 1165 (9th Cir. 2003) .................................................................................29

*Markert v. PNC Fin. Servs. Grp., Inc.,*
  828 F. Supp. 2d 765 (E.D. Pa. 2011) ......................................................................20

*Mikes v. Strauss,*
  889 F. Supp. 746 (S.D.N.Y. 1995) ...........................................................................27

*Minn. Ass'n of Nurse Anesthetists,*
  276 F.3d 1032 (8th Cir. 2002) .................................................................................13

*Morrison v. Circuit City Stores, Inc.,*
  317 F.3d 646 (6th Cir. 2003) ...................................................................................28

*Murray v. United Food & Commercial Workers Int'l Union,*
  289 F.3d 297 (4th Cir. 2002) ............................................................................29, 30

*Nino v. Jewelry Exch., Inc.,*
  609 F.3d 191 (3d Cir. 2010)......................................................................................29

*Peabody Holding Co. v. United Mine Workers of Am., Int'l Union,*
  665 F.3d 96 (4th Cir. 2012) ..............................................................................27, 28

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ..........................................................................29

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006).......................................................................27

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010).............................................................................29

*Sher v. Goldman Sachs*,
    No. CCB-11-cv-2796, 2012 WL 1377066 (D. Md. Apr. 19, 2012) ......................27

*Spinetti v. Serv. Corp. Int'l*,
    324 F.3d 212 (3d Cir. 2003).............................................................................28

*Tate v. Hain*,
    181 Va. 402, 25 S.E.2d 321 (1943)....................................................................27

*Terminix Int'l Co. v. Palmer Ranch Ltd. P'Ship*,
    432 F.3d 1327 (11th Cir. 2005) .......................................................................27

*United States ex rel. Ackley v. Int'l Bus. Machs. Corp.*,
    76 F. Supp. 2d 654 (D. Md. 1999) ....................................................................18

*United States ex rel. Baltazar v. Warden*,
    635 F.3d 866 (7th Cir. 2011) ...........................................................................13

*United States ex rel. Batiste v. SLM Corp.*,
    659 F.3d 1204 (D.C. Cir. 2011)....................................................................3, 6, 7

*United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*,
    496 F.3d 1169 (10th Cir. 2007) .......................................................................16

*United States ex rel. Carter v. Halliburton Co.*,
    No. 1:11-cv-602, 2011 WL 6178878 (E.D. Va. Dec. 12, 2011).....................5, 9, 10

*United States ex rel. Cassaday v. KBR, Inc.*,
    590 F. Supp. 2d 850 (S.D. Tex. 2008) ..............................................................27

*United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*,
    606 F.3d 361 (7th Cir. 2010) .......................................................................9, 10

*United States ex rel. Coleman v. State of Ind.*,
    No. IP96-0714-C, 2000 WL 1357791 (S.D. Ind. Sept. 19, 2000) .........................18

*United States ex rel. Davis v. Prince*,
    753 F. Supp. 2d 569 (E.D. Va. 2011) ..................................................... passim

*United States ex rel. DeCesare v. Americare In Home Nursing*,
  757 F. Supp. 2d 573 (E.D. Va. 2010) ...................................................................24

*United States ex rel. Detrick v. Daniel F. Young, Inc.*,
  909 F. Supp. 1010 (E.D. Va. 1995) ....................................................................18

*United States ex rel. Dingle v. Bioport Corp.*,
  388 F.3d 209 (6th Cir. 2004) ...............................................................................12

*United States ex rel. Dugan v. ADT Sec. Servs., Inc.*,
  No. DKC 2003-cv-3485, 2009 WL 3232080 (D. Md. Sept. 29, 2009) .............19, 25

*United States ex rel. Folliard v. CDW Tech. Servs., Inc.*,
  722 F. Supp. 2d 37 (D.D.C. 2010) .........................................................................3

*United States ex rel. Folliard v. Synnex Corp.*,
  798 F. Supp. 2d 66 (D.D.C. 2011) .........................................................................8

*United States ex rel. Gilligan v. Medtronic, Inc.*,
  403 F.3d 386 (6th Cir. 2005) ...................................................................12, 13, 16

*United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*,
  680 F.3d 933 (7th Cir. 2012) ...............................................................................13

*United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*,
  No. 99-c-06313, 2001 WL 40807 (N.D. Ill. Jan. 16, 2001)..............................18, 21

*United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*,
  390 F.3d 1276 (10th Cir. 2004) .....................................................................9, 10, 11

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
  318 F.3d 214 (D.C. Cir. 2003) ...............................................................................3

*United States ex rel. Heineman-Guta v. Guidant Corp.*,
  874 F. Supp. 2d 35 (D. Mass. 2012) ......................................................................7

*United States ex rel. Holmes v. Consumer Ins. Grp.*,
  318 F.3d 1199 (10th Cir. 2003) ...........................................................................22

*United States ex rel. Jones v. Collegiate Funding Servs., Inc.*,
  469 F. App'x 244 (4th Cir. 2012) .........................................................................21

*United States ex rel. King v. Hillcrest Health Ctr., Inc.*,
  264 F.3d 1271 (10th Cir. 2001) ...........................................................................18

*United States ex rel. Kirk v. Schindler Elevator Corp.*,
  601 F.3d 94 (2d Cir. 2010), *rev'd on other grounds, Schindler Elevator Corp. v.
  United States ex rel. Kirk*, 131 S. Ct. 1885 (2011) ...............................................15

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
   149 F.3d 227 (3d Cir. 1998)..................................................................................3, 5, 6, 8

*United States ex rel. Lancaster v. Boeing Co.*,
   778 F. Supp. 2d 1231 (N.D. Okla. 2011) ..............................................................14

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
   243 F.3d 1181 (9th Cir. 2001) ..........................................................................3, 10

*United States ex rel. Mathews v. Bank of Farmington*,
   166 F.3d 853 (7th Cir. 1999) .............................................................14, 17, 18, 21

*United States ex rel. Osheroff v. Humana, Inc.*,
   No. 10-24486-cv-SCOLA, 2012 WL 4479072 (S.D. Fla. Sept. 28, 2012)...........11

*United States ex rel. Piacentile v. Sanofi Synthelabo, Inc.*,
   No. 05-cv-2927, 2010 WL 5466043 (D.N.J. Dec. 30, 2010)..............................7, 10

*United States ex rel. Poteet v. Lenke*,
   604 F. Supp. 2d 313 (D. Mass. 2009) ...................................................................6

*United States ex rel. Poteet v. Medtronic, Inc.*,
   552 F.3d 503 (6th Cir. 2009) .................................................................................6

*United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*,
   No. 1:08-cv-2277-RWS, 2012 WL 2885356 (N.D. Ga. July 12, 2012) ...............10

*United States ex rel. Sanchez v. Abuabara*,
   No. 10-cv-61673, 2012 WL 1999527 (S.D. Fla. June 4, 2012)...........................11

*United States ex rel. Shea v. Verizon Bus. Network Servs. Inc.*,
   No. 1:09-cv-1050, 2012 WL 5554792 (D.D.C. Nov. 15, 2012)...........................10

*United States ex rel. Siller v. Becton Dickinson & Co.*,
   21 F.3d 1339 (4th Cir. 1994) ...............................................................................18

*United States ex rel. Smith v. Yale Univ.*,
   415 F. Supp. 2d 58 (D. Conn. 2006).....................................................................22

*United States ex rel. Smith v. Yale-New Haven Hosp., Inc.*,
   411 F. Supp. 2d 64 (D. Conn. 2005)......................................................................3

*United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*,
   No. 5:00-cv-39-M, 2004 WL 2403114 (W.D. Ky. Sept. 30, 2004).........................8

*United States ex rel. Vuyyuru v. Jadhav*,
   555 F.3d 337 (4th Cir. 2009) ........................................................................12, 19

*United States ex rel. Wickliffe v. EMC Corp.*,
  473 F. App'x 849 (10th Cir. 2012) ....................................................................7

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
  525 F.3d 370 (4th Cir. 2008) .....................................................................23, 27

*United States v. Smith & Nephew, Inc.*,
  749 F. Supp. 2d 773 (W.D. Tenn. 2010)........................................................11

*Whitman v. Legal Helpers Debt Resolution, LLC*,
  No. 4:12-CV-00144-RBH, 2012 WL 6210591 (D.S.C. Dec. 13, 2012)................28

**STATUTES**

5 U.S.C. § 552(b) ...................................................................................................15

31 U.S.C. § 3730......................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).................................................................................. *passim*

**OTHER AUTHORITIES**

Black's Law Dictionary (7th ed. 1999)..................................................................21

# INTRODUCTION

Relators' Opposition fails to rebut ACADEMI's showing that this Court should dismiss Relators' Second Amended Complaint ("SAC").  Indeed, the Opposition is replete with concessions and tacit admissions demonstrating that dismissal is appropriate.

Regarding the first-to-file bar, Relators concede that the proper way to determine whether the SAC should be dismissed is to compare it side-by-side to the *Davis* complaint to determine whether the *Davis* allegations were sufficient to put the government on notice of the fraud alleged here.  Rather than perform that analysis, however, Relators improperly focus on the granular details of the SAC, thereby misapplying what they concede is the proper test.

As to weapons qualifications, Relators cannot avoid the fact that essentially the same allegation is in both complaints.  Both allege that ACADEMI provided personnel unqualified to carry weapons and falsified documents to conceal their conduct.  Likewise, Relators cannot escape that the *Davis* complaint was sufficient to put the government on notice to investigate whether personnel were occupying the positions for which they were billed.  Both complaints allege that, on the same contract, ACADEMI falsely billed for labor services not rendered.

With respect to the public disclosure/original source bar, Relators concede their weapons allegations were publicly disclosed in *Winston*, but misapply the law in arguing that numerous other public disclosures that ACADEMI cited were insufficient to invoke the public disclosure bar.  Moreover, Relators cannot show they are original sources.  They lack the necessary knowledge and failed to voluntarily disclose their information to the government before filing their action.  As to labor fraud, Relators concede that their allegations were publicly disclosed. However, they again fail to demonstrate that they are original sources, as their purported knowledge comes secondhand and they have not voluntarily disclosed their information.

With regard to ACADEMI's Rule 12(b)(6) and 9(b) arguments, Relators try to wriggle out of what they pled, but fail to cite any contract requirement to support their allegation that ACADEMI provided unqualified personnel because firearms instructors failed to properly score shooters on belt fed weapons.  That failure warrants dismissal.  Likewise, Relators' allegation, that ACADEMI provided unqualified personnel because "[n]umerous times" they never shot the belt-fed weapons, should be dismissed because it is devoid of the requisite particulars.

With respect to Count III's reverse false claim allegation, Relators ignore what they pled – that ACADEMI was obligated *to pay* Deduct Clause penalties to the government for failure to fully man details.  But as Relators now concede, the Deduct Clause contains no such requirement.  That concession requires dismissal of Count III.

Finally, Relators' retaliation claims must be arbitrated.  Relators concede their claims are covered by arbitration clauses in their agreements and that False Claims Act ("FCA") retaliation claims are arbitrable.  Thus, even were the arbitrator or the Court to take issue with some provisions in the arbitration clauses of their agreements, that should not allow Relators to escape their agreements to arbitrate matters arising from their service.

## I.     THE FIRST-TO-FILE BAR PRECLUDES RELATORS' ALLEGATIONS

Relators concede that in analyzing whether the first-to-file bar, 31 U.S.C. § 3730(b)(5), applies, a court must conduct a side-by-side comparison of the earlier and later filed complaints to determine whether the earlier one was sufficient to put the government on notice of the later-pled fraud.  Opp'n at 10.  Relators conspicuously avoid that  comparison, ignore the language from the complaints, and attempt to distinguish the frauds alleged in *Davis* by improperly focusing on the details of the allegations.  They do so because the *Davis* allegations would have led the government, had it chosen to investigate, to the fraud alleged in the SAC.  Instead,

Relators argue that a later action is only barred if it alleges the *same* fraudulent scheme.  *See* Opp'n at 9.  However, the case law holds that related or slightly different allegations are sufficient to trigger the first-to-file bar.  *See, e.g.*, *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998); *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011).  In addition, the two complaints must be compared "at a sufficiently high level of generality."  *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 37, 40-41 (D.D.C. 2010); *see* Mem. at 4-6.

Relators focus on details that they argue distinguish the SAC, but carefully avoid the material elements common to the SAC and *Davis* – that the same defendant, on the same contract, during the same time period, for the same services, allegedly falsified the same invoices, and concealed the same basic fraudulent activity by billing for unqualified personnel and for labor not provided.  Because the first-to-file bar applies so long as the later action shares "the same material elements of fraud described in an earlier suit, regardless of whether the allegations incorporate somewhat different details," *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001); *United States ex rel. Smith  v. Yale-New Haven Hosp., Inc.*, 411 F. Supp. 2d 64, 76 (D. Conn. 2005),[1] complaints such as the SAC that are encompassed by or overlap with broad allegations in earlier-pled actions are precluded.  *E.g.*, *LaCorte*, 149 F.3d at 235-36; *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218-19 (D.C. Cir. 2003); *Lujan*, 243 F.3d at 1185-86.

## A.    *Davis* Was Sufficient to Put the Government on Notice of Relators' Weapons Allegations

Relators argue that *Davis* was insufficient to put the government on notice of the

---

[1] In *Smith*, differences "serving to flesh out the details of the particular fraud and the particular method[] [were] not material or different enough" to prevent the application of the first-to-file bar.  411 F. Supp. 2d at 76.

weapons qualifications fraud alleged in the SAC.  Relators do not compare what they pled to

what was pled in *Davis*.  Instead, they insist that the *Davis* allegations "have nothing whatsoever

to do with" the SAC's weapons qualification allegations.  Opp'n at 13.  But Relators' insistence

is belied by the SAC's language.

Relators avoid all mention of the actual language in the complaints because a comparison

leads to no conclusion other than the SAC is "related" under the first-to-file bar.  *Davis* alleged,

*inter alia*, that ACADEMI was "providing unqualified shooters" and "billing for services . . .

provided by . . . unqualified personnel,"  Ex. 1 ¶¶ 34, 38,[2] that the "WPPS contracts expressly set

forth detailed requirements to ensure that [ACADEMI] provided only highly-trained and

qualified personnel who are competent to carry weapons[,]" that ACADEMI failed to comply

with these requirements and "repeatedly and knowingly deployed . . . personnel known to be

unqualified," "repeatedly and routinely falsified relevant records" to prevent the State

Department from finding out, and "avoid[ed] penalties" for "fail[ing] to provide . . . highly

trained and qualified personnel."  Ex. 3, ¶¶ 34, 37, 38, 39, 45.  These allegations are undeniably

related to the SAC's allegations that the "WPPS Contract contains . . . provisions that require

ACADEMI personnel to satisfy specified firearms qualification requirements," the "WPPS

Contract makes clear that a PRS who is not qualified quarterly with all required weapons may

not provide protective services," that "ACADEMI fraudulently billed the State Department for . .

. PRSs . . . ineligible to serve in the WPPS program," "made and submitted falsified weapon

qualification forms . . . to obfuscate that it was staffing protection details with ineligible PRSs

who had not been qualified quarterly with [the weapons] as the WPPS Contract requires," and

"improperly avoided penalties due under the Deduct Clause by failing to disclose that its PRSs

---

[2]  Citation of Exhibits 1 - 28 refers to those attached to ACADEMI's Memorandum (ECF No.
47).  ACADEMI has numbered additional exhibits sequentially as Exhibits 29 - 37.

were not qualified," SAC ¶¶ 5, 41, 92, 143.  The essential elements common to both complaints are that ACADEMI provided unqualified personnel, falsified records, and thereby avoided Deduct Clause penalties.  In short, *Davis* put the government on notice sufficient to uncover the fraud alleged in the SAC.

Ignoring the plain language of the *Davis* complaint, Relators rely on this Court's recapitulation of the *Davis* worthless services claim to contend that *Davis*' inclusion of the examples the Court cited as to why personnel were unqualified, *i.e.*, drug use, excessive force and weapons' trafficking, means the government was on notice of only those specific examples. Opp'n at 13.  This contention fails because, as noted above, *Davis* also alleged that ACADEMI provided personnel unqualified to carry weapons.  Second, Relators' argument ignores that the allegations need only be related, not identical, and that broad allegations may encompass more specific ones.  *See, e.g.*, *LaCorte*, 149 F.3d at 234; *United States ex rel. Carter v. Halliburton Co.*, No. 1:11-cv-602, 2011 WL 6178878, at *6 (E.D. Va. Dec. 12, 2011).  Significantly, Relators also fail to respond to this Court's observation that "[a]n allegation that Blackwater was employing personnel with 'background and experience shortfalls' was more than sufficient *to place the government on notice* that Blackwater was billing for unqualified personnel, regardless of the reason for the lack of qualifications."[3]  *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 592 (E.D. Va. 2011) (emphasis added).  Relators cannot escape the first-to-file bar simply because the *Davis* complaints alleged additional reasons why ACADEMI personnel were unqualified beyond those alleged in the *Beauchamp* SAC.

Relators nonetheless argue that the first-to-file bar should not apply because the unqualified personnel allegations in *Davis* were dismissed pursuant to the public disclosure bar.

---

[3]  Nor is there any distinction to be made between pre-deployment versus recertification during deployment – recertification necessarily involves certification of the same qualifications.

Opp'n at 13-14.  Lacking support in the Fourth Circuit and the plain language of the first-to-file

bar, Relators rely on *Campbell v. Redding Medical Center*, 421 F.3d 817 (9th Cir. 2005), and

*United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (6th Cir. 2009), neither of which is

binding here and both of which were decided wrongly and contrary to the FCA's purpose.[4]

### B.     *Davis* Was Sufficient to Put the Government on Notice of Relators' Labor Allegations

The first-to-file bar also precludes Relators' allegation that ACADEMI fraudulently

billed for labor services not rendered.  Both the *Davis* complaint and the SAC allege that

ACADEMI billed for personnel who were not providing required services.  *Davis* alleged that

ACADEMI "falsified . . . the records on a monthly basis to demonstrate how many personnel

were on the ground *and providing security services*" . . . "to obtain payment for services not

rendered" and to "conceal, avoid, and decrease [its] obligation to repay money to the United

States."  Ex. 3 ¶¶ 27 (emphasis added), 69, 71.  Relators' SAC alleges that ACADEMI

"knowingly presented false claims for payment to the State Department . . . for PRS[s] who did

---

[4]  In *Campbell*, the Ninth Circuit carved out an exception to what it had previously characterized as an "exception-free" provision, holding that "the first to file rule of § 3730(b)(5) bars only subsequent complaints filed after a complaint *that fulfills the jurisdictional prerequisites of § 3730(e)(4)*."  *Id.* at 821 (emphasis added).  This exception appears nowhere in the statute.  Nor does it make any sense.  The first-to-file bar "furthers the FCA's twin goals of rejecting suits which the government is already capable of pursuing itself, while promoting those which the government is not equipped to bring on its own."  *Batiste*, 659 F.3d at 1208 (citation omitted); *accord LaCorte*, 149 F.3d at 234.  Where an earlier-filed suit is barred by public disclosure, the government *is already* on notice of the allegations in the relator's later-filed complaint by virtue of those disclosures and is capable of pursuing them.  *Cf. Batiste*, 659 F.3d at 1210 (notice may be sufficient for government to discover related fraud without meeting Rule 9(b)).  Second, *Campbell*'s rationale would read an original source exception into the first-to-file bar where plainly none exists. Third, *Campbell*'s holding also creates a practical problem, forcing district courts to somehow analyze subject-matter jurisdiction of related actions pending elsewhere.

*Poteet*'s discussion of the *Campbell* exception is *dicta* and provides no rationale for following it. 552 F.3d at 515; *see id.* at 520 ("I do not agree with the majority's further (and entirely unnecessary) discussion of the inapplicability of the first-to-file rule. . . .") (McKeague, J. concurring); *see also United States ex rel. Poteet v. Lenke*, 604 F. Supp. 2d 313, 323 (D. Mass. 2009) (sharing Judge McKeague's "skepticism" of such an exception to the first-to-file bar).

not perform the services reflected in that invoice," billed for "services not rendered," and did so

in part to "obfuscate that it was not fully manning details . . . and therefore was liable for

penalties under the Deduct Clause."  SAC ¶¶ 93, 130.  Each case shares the essential element

that ACADEMI billed for labor services it did not provide.  An investigation into whether labor

invoices were false because services were not rendered would include a review of whether

personnel served in the positions billed.

Rather than compare the allegations on the face of the complaints, as the law requires,

Relators improperly argue *Davis*' litigation history.  They focus on ACADEMI's summary

judgment argument that ACADEMI lacked Rule 9(b) notice of the labor fraud alleged in the

SAC.  Relators assert that ACADEMI should be estopped from making its first-to-file argument

because of its Rule 9(b) argument in *Davis*.  Opp'n at 12.  But ACADEMI had no reason to raise

the first-to-file analysis in *Davis*.  It understandably objected to being required to defend itself on

the eve of trial from allegations that had not been pled with the particularity required by Rule

9(b) nor pursued in discovery.

Moreover, whether an earlier complaint meets the requirements of Rule 9(b) presents a

different issue than that raised by the first-to-file bar.  "[F]irst-filed complaints need not meet the

heightened standard of Rule 9(b) to bar later complaints; they must provide only sufficient notice

for the government to initiate an investigation into the allegedly fraudulent practices, should it

choose to do so."  *Batiste*, 659 F.3d at 1210.  Indeed, "a complaint may provide the government

sufficient information to launch an investigation of a fraudulent scheme even if the complaint

does not meet the particularity standards of Rule 9(b)."  *Id*.[5]  Thus, there is no inconsistency

---

[5]  *See United States ex rel. Wickliffe v. EMC Corp*., 473 F. App'x 849, 851-52 (10th Cir. 2012)
(noting uneasiness with application of 9(b) standard in first-to-file context); *United States ex rel.
Heineman-Guta v. Guidant Corp*., 874 F. Supp. 2d 35, 40 (D. Mass. 2012) (agreeing with

between ACADEMI's arguments in *Davis* and here – they involve different standards, law, and purposes.

Nonetheless, if the Court were to consider the *Davis* litigation history, those proceedings only prove ACADEMI's point. Relators' counsel, common to both cases, argued in *Davis* that the labor fraud alleged in the SAC was encompassed by the *Davis* complaint. Ex. 29 (May 20, 2011 Hr'g Tr.), at 87-88 (counsel stating "[the *Davis* complaint] language *is sufficiently broad*" to cover labor fraud about which positions personnel worked, and responding, "Yes, we knew that" when the Court asked whether the *Davis* relators knew of false labor designations when filing their complaint);[6] *cf. LaCorte*, 149 F.3d at 235-36 (earlier complaint broad enough to encompass later complaint's allegations); *United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*, No. 5:00-cv-39-M, 2004 WL 2403114, at *6, *9 (W.D. Ky. Sept. 30, 2004) (same). Second, this Court's initial assessment and agreement that the *Davis* complaint's labor allegations encompassed the labor fraud in the SAC is compelling support for the conclusion that the language in the *Davis* complaint sufficed to place the government on notice of the labor fraud alleged in Relators' SAC (even if not to 9(b) standards).[7] Relators must face the consequences of the broad pleading in *Davis* and cannot escape the admission that, as pled, the *Davis*

---

*Batiste*); *United States ex rel. Piacentile v. Sanofi Synthelabo, Inc.*, No. 05-cv-2927, 2010 WL 5466043, at *5 (D.N.J. Dec. 30, 2010) (rejecting argument that 9(b) standard should apply); *United States ex rel. Folliard v. Synnex Corp.*, 798 F. Supp. 2d 66, 74-76 (D.D.C. 2011) (same).

[6] Even *Relators* themselves concede, in their written material disclosure statements, that their labor fraud allegations are related to those alleged in *Davis*:

> This disclosure includes only my observations of fraud occurring from June 2009 through the present. My understanding is that Brad and Melan Davis have *already* apprised the Department of Justice about *the fraudulent billings* occurring before June 2009 and have a pending lawsuit.

Opp'n Ex. 9, Tabs A & B, ¶ 6 (Relators' material disclosure statements) (emphasis added).

[7] Ex. 29 (May 20, 2011 Hr'g Tr.), at 116 (COURT: "I rejected your claim, Mr. Beizer, that they're limited to numbers of people. I'm including the people's positions, too. I'm including that.").

complaint was sufficient to put the government on adequate notice of the labor fraud alleged in Relators' SAC.

### C.      The *Davis* FCA Case Is a Pending Action

Relators also argue that *Davis* is no longer pending and should not bar the SAC.  Opp'n at 14-15.  The plain language of the FCA statute, and persuasive authority, direct otherwise.

The FCA's "first-to-file" bar provides:

> When a person brings an action under this subsection, no person other than the Government may intervene or *bring* a related action based on the facts underlying the *pending* action.

31 U.S.C. § 3730(b)(5) (emphasis added).  Thus, by its plain language, the first-to-file bar precludes actions that are brought, *i.e.* filed, when the earlier action is pending.  The pertinent time for this inquiry is the date the later action was filed.  *Carter*, 2011 WL 6178878, at *8 (citing *United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004)).  Even the case Relators rely on – *United States ex rel. Chovanec v. Apria Healthcare Group, Inc.* – says just that.  606 F.3d 361, 362 (7th Cir. 2010) ("One 'brings' an action by commencing suit.").  It is indisputable that when Relators brought their suit in April 2011 (and even their SAC in November 2012), *Davis* was pending.

Relators argue that even though they brought their case while *Davis* was pending, the bar should not be applied because on December 6, 2012, the Fourth Circuit affirmed the judgment in *Davis* and, therefore, it is no longer pending.[8]  Opp'n at 14-15.  Their sole support is *Chovanec*, where the court dismissed a later-filed complaint but without prejudice because the earlier-filed complaints had settled by that time.  606 F.3d at 365.[9]  Relators find no other support for their

---

[8]  Irrelevant as it is, no mandate has issued from the Fourth Circuit in *Davis* – it is still pending.

[9]  Relators mischaracterize *Chovanec*, asserting the later complaint was brought "*after* two prior complaints that constituted 'related actions' . . . had settled."  Opp'n at 14 (emphasis added).

argument, and, if it were accepted, it would undermine the purpose of the first-to-file bar.  And

even in *Chovanec*, the Court still dismissed the later, related action, just without prejudice.

"To hold that a later dismissed action was not a then pending action would be contrary to

the plain language of the statute and legislative intent." *Lujan*, 243 F.3d at 1187-88; *United*

*States ex rel. Shea v. Verizon Bus. Network Servs. Inc.*, No. 1:09-cv-1050, 2012 WL 5554792, at

*5 (D.D.C. Nov. 15, 2012) (amending complaint after dismissal of related action did not avoid

first-to-file bar).[10]  The first-to-file bar is intended to create a race to the courthouse and

promptly alert the government to the alleged fraud; once the government is on notice, further *qui*

*tam* suits are unnecessary.  *See United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*,

No. 1:08-cv-2277-RWS, 2012 WL 2885356, at *5 (N.D. Ga. July 12, 2012) (rejecting

"reappearing" jurisdiction that would occur if later complaints could be refiled).  Relators' theory

must be rejected.

In sum, the first-to file bar precludes Relators' false claims allegations.

## II.     PUBLIC DISCLOSURE BARS RELATORS' CLAIMS

### A.     The Public Disclosure Bar Remains a Threshold Jurisdictional Inquiry

Relators argue that the removal of the term "jurisdiction" from the amended 31 U.S.C. §

3730(e)(4) renders it non-jurisdictional and precludes ACADEMI's public disclosure arguments,

at least until summary judgment.  Opp'n at 15-17.  This argument is meritless.

Relators cite no legislative history to support their claim because there is none.  Nor do

---

That is not correct.  "When Christine Chovanec filed this suit, two other *qui tam* actions against
Apria were pending. . . ."  *Chovanec*, 606 F.3d at 362.

[10]  *See also Piacentile*, 2010 WL 5466043, at *4 ("even complaints that are later dismissed have
preclusive effect"); *cf. Grynberg*, 390 F.3d at 1279 n.2 (settlement of earlier case irrelevant to
determination that it was pending when related case brought); *Carter*, 2011 WL 6178878, at *8
(voluntary dismissal of later saction still precluded because earlier action was pending when later
action was first brought).

they cite FCA decisions holding that the amended public disclosure bar is not jurisdictional or is inappropriate for analysis at this preliminary stage; to the contrary, cases applying the amended bar continue to treat it as jurisdictional. *See United States ex rel. Sanchez v. Abuabara*, No. 10-cv-61673, 2012 WL 1999527, at *2 (S.D. Fla. June 4, 2012) ("Congress eliminated an absolute jurisdictional bar in favor of a jurisdictional bar that can be lifted by government discretion."); *United States ex rel. Osheroff v. Humana, Inc.*, No. 10-24486-cv-SCOLA, 2012 WL 4479072, at *4 (S.D. Fla. Sept. 28, 2012) (public disclosure is a "jurisdictional threshold [that] must be resolved preliminarily"); *United States v. Smith & Nephew, Inc.*, 749 F. Supp. 2d 773, 781 (W.D. Tenn. 2010).

Relators quote *Arbaugh v. Y & H Corp.* for the proposition that courts should not treat a statutory limitation as jurisdictional where Congress has not deemed it so. 546 U.S. 500, 502 (2006). But this does not mean the word "jurisdiction" itself must appear.[11] The public disclosure provision is in subsection 31 U.S.C. § 3730(e), entitled "Certain Actions Barred." This language, along with the express direction that a court "shall dismiss" an action where substantially the same allegations or transactions were publicly disclosed, indicates that the bar remains jurisdictional.[12] Relators' assertion that the public disclosure bar's preclusive effect cannot be considered until at least the close of discovery contradicts the statutory language that a court "shall dismiss" actions subject to it and that such actions are "barred." 31 U.S.C. §§ 3730(e), 3730(e)(4).

---

[11]   For example, circuit courts consistently refer to the FCA's first-to-file bar as jurisdictional even though 31 U.S.C. § 3730(b)(5) does not so state. *See, e.g.*, *Grynberg*, 390 F.3d at 1278.

[12]   At most, removal of the term "jurisdiction" allows room for the possibility that the government might oppose dismissal on public disclosure grounds. 31 U.S.C. § 3730(e)(4).

**B.     Relators' Weapons Allegations Have Been Publicly Disclosed and Relators Are Not Original Sources**

Relators concede that *Winston* is a qualifying public disclosure, but they deny that any other disclosures ACADEMI cited qualify.  Opp'n at 18, 22-29.  Relators' wholesale rejection of these numerous disclosures ignores the pertinent law, Mem. at 17-18, that (1) a public allegation that notifies the government of the possibility of fraud surrounding the services provided or is broad enough to encompass the fraud alleged in the *qui tam* action qualifies as a public disclosure, *United States ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 389-91 (6th Cir. 2005);[13] (2) public disclosures must be considered not just separately, but in their totality, *e.g.*, *United States ex rel. Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004); (3) a claim even partly based upon a public disclosure triggers the bar, *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 351 (4th Cir. 2009); and (4) public disclosures need not include the identical allegations and transactions, but merely ones that are substantially the same as or that support those in the complaint, *see, e.g.*, *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 915 (7th Cir. 2009) (collecting cases).  Moreover, most of the disclosures ACADEMI cited *independently* reveal allegations of fraud substantially the same as Relators' weapons allegations or their essential elements, and are even more compelling when considered together.

ACADEMI relies principally on its descriptions of these disclosures in its Memorandum

---

[13]  *Gilligan* makes clear that courts "do not require specific disclosure of fraud to find public disclosure.  So long as the information alleged is sufficient to put the government on notice of the likelihood of *related* fraudulent activity, the prior public disclosure requirement is satisfied." 403 F.3d at 389 (emphasis added); *see also id.* ("A public allegation of fraud, regardless of the specificity of the allegation, is also sufficient to put the government on notice of the potential existence of fraud . . ."); *id.* at 390 ("So long as the disclosed fraud puts the government on notice of the 'possibility of fraud' *surrounding the product or transaction*, the prior disclosure is sufficient.") (emphasis added); *id.* at 391 ("although the allegations in the prior cases referred to a slightly different type of fraud than the fraud alleged in the current case, such allegations were *sufficiently general that they could encompass the fraud alleged* in the *qui tam* action") (emphasis added); *see also* Mem. at 15-18 (citing cases).

*see* Mem. at 20-26, Attach. A(Chart of Public Disclosures of Weapons Allegations), but briefly

addresses Relators' responses to the various public disclosures.

*Davis* Complaints (Exs. 1, 3). Relators' response is similarly deficient to their first-to-file

argument – they ignore the language in *Davis* alleging that ACADEMI, *inter alia*, was

fraudulently "providing unqualified shooters" (Ex. 1 ¶ 34) and failed to provide "qualified

personnel who are competent to carry weapons" while "repeatedly and routinely falsif[ying]

relevant records" to conceal the fraud. Ex. 3 ¶¶ 34, 45; *see also* Mem. at 22-23. Relators again

erroneously argue that *Davis* "did not even mention weapon qualifications, much less frauds . . .

with respect to those allegations," when in fact it did. Opp'n at 23. Relators' attempt to avoid

these *Davis* allegations fails. *See Gilligan*, 403 F.3d at 389.[14]

    *Davis* Opposition to Motion to Dismiss (Ex. 7). Relators complain that ACADEMI

"carve[d] up a statement taken out of context" from this public filing to present an

"overgeneralized allegation about personnel qualifications generally." Opp'n at 23-24.

ACADEMI highlighted the pertinent parts to make its point clear; a review of the context

demonstrates that Relators' accusation is unfounded. The disclosures included a claim that

ACADEMI was "supplying unfit personnel who were *not qualified to carry weapons*" and

falsified records to conceal it. Ex. 7 at 8. What Relators refer to as "overgeneralizations" are in

fact the type of allegations and transactions this Court in *Davis* ruled were qualifying public

disclosures. 753 F. Supp. 2d at 592.

---

[14] Trying to differentiate the SAC from *Davis*, Relators cite three cases for the proposition that public disclosures should not be "overgeneralized" to preclude *qui tam* actions. These cases are inapposite. They involve disclosures of industry-wide or similar fraud which do not even name the defendant, *United States ex rel. Baltazar v. Warden*, 635 F.3d 866, 867-68 (7th Cir. 2011); *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 935-36 (7th Cir. 2012), or which fail to disclose a true and false state of facts from which fraud could be inferred, *Minn. Ass'n of Nurse Anesthetists*, 276 F.3d 1032, 1044 (8th Cir. 2002). The *Davis* complaints specifically target ACADEMI and plainly allege it committed fraud.

<u>2007 Program Management Review Report and Accompanying Files (Exs. 8-10)</u>.

Relators argue incorrectly that the PMR documentation was not made "public."  The Seventh

Circuit in *Glaser* did *not*, as Relators argue, overrule its prior holding in *United States ex rel.*

*Mathews v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999), that disclosure of a report or

investigation to a competent official within the government is a public disclosure under the

FCA.[15]  And Relators' citation of *Graham County Soil & Water Conservation District v. United*

*States ex rel. Wilson* is inapposite because that case analyzed whether *state* reports were

qualifying disclosures under the prior version of the public disclosure bar, not whether they were

*public* or not.  130 S. Ct. 1396, 1405 (2010).

Relators next argue that the plain language of § 3730(e)(4) indicates that to be "public" a

disclosure must be in the hands of someone outside the government, but they provide no

language from the statute for that point.  Moreover, Relators' argument ignores the numerous

district and circuit cases ACADEMI cited holding that disclosure to certain government officials

does, in fact, make it public.  Mem. at 24-25, n.12; *see also United States ex rel. Lancaster v.*

*Boeing Co.*, 778 F. Supp. 2d 1231, 1244 (N.D. Okla. 2011) (same).  Further, ACADEMI does

not argue that disclosure to just anyone in the government qualifies, but only to officials in a

position to act on the alleged fraud (whether they do so or not).

Relators argue that the FCA legislative history counsels against finding disclosures to be

"public" when they are merely sitting in government file cabinets.  ACADEMI does not argue

that but, rather, contends that reports provided directly to the government official or officials in a

position to act on the allegations fulfills the purpose of the statute – to notify the government so

---

[15]  To the contrary, *Glaser* <u>affirmed</u> *Mathews* on that point.  *Glaser*, 570 F.3d at 913.  It
overruled *Mathews* as to the meaning of "based upon" under the prior version of the bar.  *Id.*

it can investigate.  Whether a document is "public" for FCA purposes is a different question than whether it is readily accessible to the public at large.[16]

Furthermore, the PMR documents are public for FCA purposes because they have been in the possession of a member of the public, Don Thomas.  Thomas was a contractor who worked for Harding Security, the company hired by the State Department to conduct the PMR in 2007. Ex. 30 (7/28/2011 Trial Tr. 17-21).  After concluding his contract work for the State Department in April 2008 and leaving Harding Security, *id.*, Mr. Thomas – then a member of the public – retained some if not all the cited PMR documents.  *See* Ex. 31 (7/23/2011 Burke e-mail re PX 337 and PX 338).[17]  This retention made them public.[18]  As a member of the public, he voluntarily provided them to the *Davis* relators sometime in 2011 absent a subpoena and outside any protective order or court processes.  *Id.*[19]

As to the substance of the PMR documents, Relators deny that they disclose the SAC's weapons allegations.  But the PMR alleged that ACADEMI had not "re-qualified" its personnel

---

[16]  In fact, FOIA responses are "public" reports even in the hands of a single recipient.  *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 104 (2d Cir. 2010) ("[E]very circuit to have considered this issue has determined that information produced in response to a FOIA request becomes public once it is received by the requester.") (collecting cases), *rev'd on other grounds*, *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885 (2011).

[17]  ACADEMI attached excerpts of PX 337 as Ex. 10 to its Memorandum.  Excerpts of PX 338 are attached here as Exhibit 32 as they further disclose the weapons and labor allegations.  *See also* Attachs. A, B (discussing same).

[18]  Relators' argument regarding the "sensitive but unclassified" legend is irrelevant as to two of the PMR disclosures because they are not so labeled.  *See* Exs. 10, 32.  Further, such a legend does not preclude public disclosure, nor does it show that the PMR documents here were not publicly disclosed.  *See, e.g.*, United States Department of State Directive 12 FAM 540, 12 FAM 541 (C) ("Designation of information as SBU does not by itself exempt information from disclosure under the FOIA (5 U.S.C. § 552b).  Rather, exemption is determined based on the nature of the information in question.").  Similarly, a "For Official Use Only" legend does not preclude public release of a document.  *See Department of Air Force v. Rose*, 425 U.S. 352 (1976) (agency must release document with FOUO legend) .

[19]  Whether Thomas disclosed the PMR documents or their contents to anyone else over the last four years is a matter for jurisdictional discovery.

on the M-249 weapons at issue in the SAC and that personnel had been observed "fixing,

reassembling" and "annotating" records concerning those qualifications.  *E.g.*, Ex. 10 at 13,17.

These allegations are substantially similar to Relators' claims.  That the PMR focused on Iraq is

of no moment – the same defendant, overlapping time period, and contract requirements are

implicated.  *See Gilligan*, 403 F.3d at 389; *United States ex rel. Boothe v. Sun Healthcare Grp.,

Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007) ("we reject the contention that a 'time, place, and

manner' distinction is sufficient to escape the force of the public disclosure bar").

Blackwater USA:  Hearing Before the House Committee on Oversight and Government

Reform (Ex. 11).  Relators argue this hearing could not encompass qualification issues other than

at hiring.  Opp'n at 27-28.  Yet Relators quote the very part of the disclosure – that ACADEMI

personnel in Afghanistan "had background and experience shortfalls overlooked in favor of

getting the requisite number of personnel" – that this Court previously ruled was a qualifying

public disclosure of the allegation that ACADEMI provided unqualified personnel.  *Davis*, 753

F. Supp. 2d at 591-92.

State Department Commissioned Audit by Cotton & Co. (Ex. 13).  This audit was made

public by disclosure to pertinent government officials.  Contrary to Relators' arguments, it

disclosed both a misrepresented set of facts and a true set of facts from which fraud could be

inferred – that ACADEMI represented that it had requalified its personnel on weapons as

required by the contract, when it allegedly had not.

House Committee on Oversight and Government Reform Memorandum (Ex. 12).

Relators reject this disclosure, but similar to the congressional hearing discussed above (Ex. 11),

this publicly disclosed congressional memorandum discussed various allegations that

ACADEMI provided unqualified personnel on WPPS, just as the SAC alleges.

Individually and taken together, the above items publicly disclosed Relators' weapons qualification allegations.

> **1.  Relators Cannot Qualify as Original Sources Because They Failed to Voluntarily Provide Their Weapons Information to the Government Before Filing Their First Amended Complaint**

All the public disclosures of Relators' weapons allegations (save *Winston*) predate the filing of Relators' First Amended Complaint ("FAC") in which they first alleged that ACADEMI provided unqualified personnel based on weapons qualifications.  To qualify as original sources, Relators must show they (i) have knowledge that is independent of and materially adds to the publicly disclosed allegations ***and*** (ii) "voluntarily provided the information [on which the allegations or transactions in their claim are based] to the Government *before filing an action . . . .*" 31 U.S.C. § 3730(e)(4)(B)(2) (emphasis added).  Relators incorrectly assert that their supplemental material disclosure statements prove they deserve original source status.

Relators filed the FAC on May 24, 2011.  But they failed to provide to the government their material disclosure statements of their weapons allegations before filing the FAC.[20]  The disclosures signal that the earliest Relators provided them to the government was May 25, 2011, a day *after* filing the FAC.  Opp'n, Ex. 9, Tabs C & D.[21]  The FCA plainly requires relators to voluntarily provide this information *before* filing.  31 U.S.C. § 3730(e)(4)(B)(2).  Relators here did not do so and, therefore, cannot qualify as original sources of the weapons allegations.

Courts uniformly and strictly enforce the statutory requirement that relators must voluntarily provide their core information to the government *before* filing suit.  *Mathews*, 166 F.3d at 865-66 (where "jurisdiction depend[s] on events which occur at determinable times, such

---

[20]  Neither Relators' original complaint nor original disclosure statements included weapons qualifications allegations.  *See* Opp'n, Ex. 9, Tabs A & B; ECF No. 1 (Compl.)

[21]  Beauchamp's disclosure was executed May 25, 2011; Shepherd's is unsigned and undated.  Opp'n, Ex. 9, Tabs C & D.  When Relators gave the government their disclosures is unstated.

as . . . voluntary provision [of a relator's information] to the government before filing a lawsuit, a plaintiff is encouraged not to dawdle. . . . [A] court can be denied jurisdiction by such an accident of timing."); *United States ex rel. Ackley v. Int'l Bus. Machs. Corp.*, 76 F. Supp. 2d 654, 668 (D. Md. 1999); *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280-81 (10th Cir. 2001); *United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr.*, No. 99-c-06313, 2001 WL 40807, at *5 (N.D. Ill. Jan. 16, 2001); *United States ex rel. Coleman v. State of Ind.*, No. IP96-0714-C, 2000 WL 1357791, at *16 (S.D. Ind. Sept. 19, 2000); *cf. United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1355 (4th Cir. 1994).

Courts also reject the notion that the *required* written material disclosure statements can qualify as the "voluntary" disclosure referenced in the original source exception. *Mathews*, 166 F.3d at 865; *Grant*, 2001 WL 40807, at *5.[22] Even if considered voluntary, however, Relators' disclosures were provided after they filed the FAC. For these reasons, Relators fail to qualify as original sources of their weapons allegations.

## 2.      Relators Lack Original Source Knowledge

Even were the Court to overlook Relators' failure to timely meet the voluntary disclosure requirement, Relators' written material disclosures show that they lack original source knowledge. Relators must have independent knowledge of the nature and quantum of the alleged fraud sufficient to satisfy Rule 9(b). *United States ex rel. Detrick v. Daniel F. Young, Inc.*, 909 F. Supp. 1010, 1019 (E.D. Va. 1995); *Davis*, 753 F. Supp. 2d at 595. They must be original sources of the core facts supporting *each* element required to state an FCA cause of

---

[22] Even if the *Winston* complaint were the *only* qualifying public disclosure of Relators' allegations, Relators fail to meet their burden to prove that they are original sources. They point to no voluntary disclosure to the government of their information, only their mandatory written disclosures. Because those written disclosures were not "voluntarily provided," under the statute's plain language, that they may have preceded *Winston* is irrelevant.

action.  *Vuyyuru*, 555 F.3d at 353; *Davis*, 753 F. Supp. 2d at 595.[23]  Additionally, Relators'

knowledge must materially add to the publicly disclosed allegations or transactions.  31 U.S.C. §

3740(e)(4)(B).  Relators must "allege specific facts – as opposed to mere conclusions – showing

exactly how and when he or she obtained [the required] knowledge of the fraudulent acts alleged

in the complaint and support those allegations with competent proof."  *United States ex rel.*

*Dugan v. ADT Sec. Servs., Inc.*, No. DKC 2003-cv-3485, 2009 WL 3232080, at *8 (D. Md. Sept.

29, 2009).

 Relators' written disclosure statements do not satisfy their burden; rather, they reveal

critical gaps in their knowledge.  First, just as this Court found with the worthless services claims

in *Davis*, the weapons allegations here are "premised on the fact that the WPPS II contract

contains material terms governing the qualifications of independent contractors deployed to . . .

Afghanistan.  Yet, [there is no evidence] that the relators have knowledge of all the pertinent

terms of the WPPS II contract."  *Davis*, 753 F. Supp. 2d at 594.  Relators' material disclosures

do not show they know the critical contractual terms concerning weapons qualifications.  Indeed,

Relators do not deny that they lifted all 30 paragraphs about the contract from the publicly

disclosed *Winston* complaint (filed by the same counsel representing Relators).  *See* Mem. at 21-

---

[23]  Relators' citation of two cases outside the Fourth Circuit for the proposition that personal
knowledge of just one element of a claim is required to be an original source, Opp'n at 30-31,
does not overcome Fourth Circuit controlling law to the contrary.  Relators also mischaracterize
*Vuyyuru*'s statement that the relator was not required to "prove the particulars of the individual
. . . claims[,]" which meant only that the relator need not know every detail of every claim, *not*
that the relator could be an original source without knowing the core facts supporting the
elements of each claim/cause of action.  555 F.3d at 353.  Nor is there any basis for the assertion
that *Vuyyuru* has been abrogated on this point by the amendment of the public disclosure bar,
Opp'n at 31, a conclusory statement that Relators do not explain or support.

22; Ex. 6 (*Beauchamp* & *Winston* comparison chart).  Relators even testified that they lack

knowledge of the material contract requirements.[24]  Thus, Relators are not original sources.

Nor do Relators provide evidence of how they purportedly know that they or other

personnel were not actually scored even when they went through the shooting qualification

process.  They also do not explain how they could know that the qualification forms were

falsified by firearms instructors when neither Relator was an instructor or otherwise participated

in recording scores.  And Relators fail to show their knowledge that the weapons qualification

sheets were actually certified or submitted to the State Department, or that they were material to

payment, facts needed to prove an FCA claim.  Relators' sporadic presence at the shooting range

does not make them original sources as to the fraudulent scheme they allege.

### C.   Relators' Labor Allegations Have Been Publicly Disclosed and Relators Are Not Original Sources

Relators do not dispute that their labor allegations are contained in numerous public

disclosures cited by ACADEMI, *see* Mem. at 26-32; Attach. B (Chart of Public Disclosures of

Labor Billing Allegations), including the *Davis* complaints, the Garrow declaration, the PMR

documents, and the DOS/High Threat investigation.  Relators have therefore waived any right to

contest that these are all qualifying public disclosures.  *See, e.g.*, *Markert v. PNC Fin. Servs.

Grp., Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in

an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or

abandoned by the non-movant. . . .") (citing *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir.

---

[24] *See* Ex. 33 (Beauchamp Dep. Tr., July 21, 2011), at 326:9-14 (Q:  "What does the WPPS II contract say about how an IC has to be qualified on a weapon?  A: I've never read it verbatim.  I don't know.  I've not seen the policy."); *id.* at 332:3-4 ("I do not know what the scoring system is for an M240 or M249."); Ex. 34 (Beauchamp Dep. Tr., May 25, 2011), at 41:22-42:12 (no more than skimmed a task order); Ex. 35 (Shepherd Dep. Tr., July 16, 2011), at 12:5-13:14 (could not recollect specific terms).

2009)).  The remaining question is whether Relators are original sources.  They are not.

Relators provided only written material disclosures to carry their burden to prove original source status.  As noted above, however, these are not the *voluntary* disclosures needed to qualify as an original source under § 3730(e)(4)(B).  *Mathews*, 166 F.3d at 865; *Grant*, 2001 WL 40807, at *5.  But even if the Court considers the written material disclosure statements to be voluntary disclosures, they fail to show Relators have knowledge of the core facts needed to state each element of their labor allegations, much less that their knowledge is independent and materially adds to the publicly disclosed allegations. [25]  As with their weapons allegations, Relators lack knowledge of the pertinent contract terms concerning the billing requirements and processes for labor.  Relators have each testified that they have never even seen a labor muster or invoice.[26]  Relators do not know how musters are filled out, their responsibilities did not give them access to the billing process, and they did not observe any alleged falsification during that process, whether in Afghanistan or at ACADEMI headquarters 7,000 miles away in North Carolina.  *E.g.*, Ex. 37 (Shepherd Dep. Tr., July 23, 2011), at 115:21-117:9 (Shepherd never reviewed any musters to verify allegations).[27]  Thus, Relators have no knowledge that anyone, themselves included, was ever *actually* misbilled.[28]  *See United States ex rel. Jones v. Collegiate*

---

[25]  "Independent" means "not dependent or contingent on something else," Black's Law Dictionary (7th ed. 1999), or "not influenced . . . by others in matters of opinion," www.dictionary.com, or "not relying on another or another for aid or support," *id.*

[26]  *See* Ex. 34 (Beauchamp Dep. Tr., May 25, 2011), at 72:5-10, 73:4-9 (does not know what a "muster sheet" is, has never seen an invoice); Ex. 36 (Beauchamp Trial Tr.), at 193:5-9 (does not know how ACADEMI tracked personnel for billing); *see also* Ex. 37 (Shepherd Dep. Tr., July 23, 2011), at 42:14-44:21 (never seen a muster sheet); *id.* at 87:10-91:3 (never seen an invoice).

[27]  Nor have they read the contract's Deduct Clause or even know what it is.  *E.g.*, Ex. 33 (Beauchamp Dep. Tr., July 21, 2011), at 241:1-242:17.

[28]  In the SAC, Relators abandon the FAC's allegations that they themselves were falsely billed. This calls into question, at a minimum, how they "know" that *other* personnel were misbilled.

*Funding Servs., Inc.*, 469 F. App'x 244, 256 (4th Cir. 2012) (scope of relators' employment did

not establish access "to the kind of information upon which [relators] allegations [were] based").

Rather, Relators' material disclosures are based entirely on "knowledge" they gained

from other personnel in Afghanistan through hearsay and gossip.   For the most part, it is unclear

how the people who informed Relators of alleged misbilling had reason to know the actual facts

underlying such accusations, much less credibly so.  But "information obtained from third

parties, such as co-workers, is neither direct *nor independent*."  *United States ex rel. Smith v.*

*Yale Univ.*, 415 F. Supp. 2d 58, 79 (D. Conn. 2006) (emphasis added); *Hays v. Hoffman*, 325

F.3d 982, 991 (8th Cir. 2003) (same).[29]  In short, Relators do not have the requisite knowledge to

qualify as original sources.  Consequently, their labor allegations are barred.[30]

## III.    RELATORS' CLAIMS ARE BARRED BY RULE 12(B)(6) AND RULE 9(B)

The SAC includes two bases for relators' so-called "false weapons qualification" scheme

– a failure to properly score and qualify its PRSs and a failure to require PRSs to shoot the M240

and/or M249 during weapons qualification.  SAC ¶ 87.  Both these claims, as well as Relators'

labor claims, should be dismissed.

### A.    Relators' "Did Not Properly Score" Allegation Fails to State a Claim

ACADEMI challenged Relators to identify the contract provision supporting their

allegation that in order to "comply with the State Department's mandated procedures for M240

and M249 qualifications, Academi's Firearms Instructors are *required* to . . . go up to the targets

---

[29]  *See also Smith*, 415 F. Supp. 2d at 77 ("For Relator's knowledge to be independent, it must
not be derivative of the information of others, even if those others may qualify as original
sources.") (internal quotations and citations omitted); *United States ex rel. Holmes v. Consumer
Ins. Grp.*, 318 F.3d 1199, 1207 (10th Cir. 2003) (*qui tam* is parasitic where it is "based on
knowledge obtained secondhand through other employees").

[30]  At most, Relators' arguments concerning their weapons and labor allegations demonstrate the
need for limited jurisdictional discovery, such as this Court granted in *Davis*.

to score hits and misses, and then replace the targets for the next shooter."  SAC ¶ 80 (emphasis

added).  Relators failed to do so.  They cite three contract provisions, Opp'n at 33-34; none

supports their allegation.  Two provisions, section C.4.3.2.1 and section 14 of Attachment G to

Section J, have nothing to do with how weapons qualification tests are to be performed.  Exs. 25,

SAC ¶ 57.  The third, Appendix N, does not even use the phrase "firearms instructors," let alone

"mandate" how instructors must *score* the tests.  Ex. 24.  As now revealed, the cornerstone of

Relators' "did not properly score" claim is a fabrication.  Contrary to Relators' assertion, the

contract does not contain any "mandated procedures for M240 and 249 qualifications" scoring

that ACADEMI's firearms instructors allegedly failed to follow.

Lacking any such contractually "mandated procedures," Relators retreat to their mere

opinion that "[i]n practice, the only possible way to score a shooter on a M240 and M249

qualification round is to approach the targets to tally hits and misses and then replace the targets

for the next shooter."  Opp'n at 34.  But Relators' opinion, unsupported by any contract

provision, does not satisfy Rule 12(b)(6)'s requirement to plead facts that plausibly show

entitlement to relief.  *See, e.g.*, *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525

F.3d 370, 377-78 (4th Cir. 2008) (a relator's subjective interpretation of a contractor's

contractual duties is insufficient to state an FCA claim).

Relators try to avoid the lack of contractual support for their claim by arguing that

ACADEMI "misunderstands the crux" of their false weapons qualifications claim.  The alleged

"crux" is "that in order to *comply* with the WPPS contractual requirement of quarterly weapons

qualifications on the M240 and M249, the firearms instructor must actually *score* each shooter

on each weapon."  Opp'n at 33.  This point is neither in dispute nor the "crux" of Relators'

allegations.  Relators cannot dispute that they alleged that ACADEMI submitted scores for each

shooter. SAC ¶ 90. Thus, the "crux" of their theory is not that ACADEMI failed to score shooters, but rather that ACADEMI did not score the shooters in accordance with Relators' opinion of how they should have been scored. Relators' unsupported opinion is not enough. Because the crux of Relators' "did not properly score" allegation rests on an opinion with no basis in the contract, the Court should dismiss this claim.

### B. Relators' "Did Not Properly Score" Claim Also Fails to Meet Rule 9(b)

Relators' allegation that ACADEMI provided unqualified personnel because firearms instructors "did not properly score" the shooters also fails to meet Rule 9(b) because it is deficient in identifying which contract requirements were not followed. Alleging that "mandated procedures" were violated without identifying them does not satisfy Rule 9(b). Nor do Relators allege with particularity how these unidentified procedures were violated.

This Court should also decline Relators' invitation to "relax" Rule 9(b)'s standard as applied to their "did not properly score" allegation. Opp'n at 41. Relators' argument incorrectly relies on *United States ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573 (E.D. Va. 2010). The *DeCesare* court did not require that the relator "point to a specific moment of fraud in terms of a time and date," *id.* at 583, because the fraud scheme at issue made *every* claim false. By contrast, Relators here do not allege that every certification was false. *See* SAC ¶ 67 ("with few *exceptions*, since April 2007 Academi has failed to score its independent contractors on the M240 and M249 in Afghanistan") (emphasis added). Those exceptions undermine the *DeCesare* premise. Relators' concession that some contractors were scored properly belies their argument that they are entitled to a "relaxed" Rule 9(b) standard.

### C. Relators' "Did Not Shoot" Allegation Fails to Meet Rule 9(b)

The SAC fails to identify which PRSs did not shoot their weapons, when that occurred, and who provided that direction. *See* Mem. at 39. Relators argue that they "are not obligated to

identify individual bad actors . . . given the high level of contextual detail Relators have already

provided." Opp'n at 38.  That assertion is insufficient and, moreover, it does not respond to

ACADEMI's other objections – who did not shoot and when.

Because the SAC does not provide these particulars, but only alleges – without specificity

– that "[n]umerous times, Academi's firearms instructors did not require PRSs even to fire the

M240 and/or M249 during weapons qualifications," SAC ¶ 87, it fails to meet Rule 9(b).  *See*

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (requiring "the

*time*, place, and contents of the false representations" to be pled) (emphasis added).  Courts

dismiss fraud claims where a time period was alleged without specific dates.  *See Dugan*, 2009

WL 3232080, at *14 (citing *United States ex rel. Cericola v. Fed. Nat'l Mortg. Ass'n*, 529 F.

Supp. 2d 1139, 1146 (C.D. Cal. 2007) (Rule 9(b) requirements not met based on allegation that

FCA violations occurred between 1995 and 1998, but without specific dates).  Relators also fail

Rule 9(b)'s particularity requirement as to which score sheet certifications and which claims for

payment were false.  The Court should dismiss the "did not shoot" claim.

### D.      Relators' Labor Allegations Fail to Meet Rule 9(b)

Relators' labor fraud allegations also lack particularity in critical respects.  Relators focus

on that which they pled, but avoid that which they did not.  Relators have not pled *how* labor

services were billed by ACADEMI personnel at headquarters in North Carolina, 7,000 miles

from Afghanistan where Relators worked.  They have no basis to know that they or anyone

else's services were misbilled, nor do they describe any particulars of the billing process or the

documents used or allegedly falsified.  These omissions bar their labor claim.

### E.      The Reverse False Claims Allegation in Count III Must Be Dismissed

Contrary to Relators' allegations, (1) the Deduct Clause did not obligate ACADEMI to

pay money to the government and (2) the imposition of Deduct Clause penalties under section

C.4.3.3 of the WPPS contract was discretionary.  *See* Mem. at 43-44.  Relators respond to the first point by abandoning their SAC allegation that the Deduct Clause obligated ACADEMI to pay money to the government.  Instead, citing no contract provision, they argue that ACADEMI was obligated to refund "overpayments" because it had improperly avoided reductions in the contract award price.  Opp'n at 35-36.  But the SAC does not allege that ACADEMI failed to refund overpayments – it alleges that ACADEMI "Avoided an Obligation to Pay Penalties." SAC, Count III at 37.  ACADEMI had no such contractual obligation.  The Deduct Clause permitted the State Department to reduce the amount it paid ACADEMI; it did *not* call for ACADEMI to pay penalties.  The Court should dismiss the claim as pled in Count III.

Relators also argue that "Academi conveniently misconstrues the Deduct Clause to support its assertion that the government's application of the clause is *discretionary* when it comes to manning shortfalls."  Opp'n at 36.  But Relators do not dispute that contract section C.4.3.3, upon which *they* rely in SAC ¶ 83, was amended to make it discretionary.  *Id.*  It may be applied when "employees are 'discharged or returned to the U.S. . . . due to dissatisfaction with the assignment or for unsatisfactory performance.'"  *Id.* (quoting Ex. 25)*.*  Relators argue that the "situation" allowing for discretion under section C.4.3.3 "is not the situation before the Court." *Id.*  But that "situation" is precisely what Relators alleged:  "Under the WPPS Contract, Academi is subject to penalties if one of its PRSs is returned to the United States for *unsatisfactory performance, such as for failure of a weapons qualification.*"  SAC ¶ 83 (emphasis added).

In sum, to avoid dismissal of Count III, Relators have tried both to add a claim they did not plead and hide the one they did.  Count III should be dismissed.[31]

---

[31]  It is worth noting that unlike Count I, in which relators allege that ACADEMI's conduct was "knowing," *see* SAC ¶ 130, they fail to make that allegation in Counts II and III, *see id.* ¶¶ 134-45.  That failure is fatal to those claims.

## IV.   RELATORS' RETALIATION CLAIMS MUST BE STAYED

Relators do not dispute that their FCA retaliation claims fall within the broad "all disputes" clause of their arbitration agreements.  Nor do they dispute that such claims are generally arbitrable as a matter of law.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("[S]tatutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); *Kellogg Brown & Root, Inc.*, 525 F.3d at 381 (affirming arbitrability of FCA retaliation claim).[32]  Instead, they argue only that the arbitration provision is unenforceable. That argument fails.[33]

### A.   Arbitrability Is for the Arbitrator to Decide

Relators wholly ignore that all six Courts of Appeals directly addressing the topic have held that incorporation of AAA Rules constitutes "clear and unmistakable evidence" that the parties intended the arbitrator to decide issues of substantive arbitrability.[34]  Relators incorrectly argue that the Fourth Circuit in *Peabody* held otherwise.[35]  *Peabody* did not involve AAA rules; the

---

[32]  *Accord Mikes v. Strauss*, 889 F. Supp. 746, 755-57 (S.D.N.Y. 1995); *United States ex rel. Cassaday v. KBR, Inc.*, 590 F. Supp. 2d 850, 863 (S.D. Tex. 2008).

[33]  Relators argue that North Carolina law applies despite the contrary law of this Court.  *See* Opp'n at 43 n.120.  "[I]t is well-recognized that Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances."  *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 859 (E.D. Va. 2011) (internal quotations omitted); *see also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Tate v. Hain*, 181 Va. 402, 410, 25 S.E.2d 321, 324 (1943).  Relators allege no exceptional circumstances; thus, New York law applies.

[34]  Mem. at 49; *see Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'Ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10-12 (1st Cir. 2009); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877-78 (8th Cir. 2009); *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006).

[35]  *Accord Sher v. Goldman Sachs*, No. CCB-11-cv-2796, 2012 WL 1377066, at *5 (D. Md. Apr. 19, 2012) (noting, after *Peabody*, that "the Fourth Circuit has not ruled on the significance of the incorporation of arbitral rules that grant authority to decide arbitrability to arbitrators"; finding clear and unmistakeable evidence that arbitrability was for the arbitrator).

agreement stated only that "[a]ny dispute alleging a breach of [the agreement], if not resolved by the parties, ***may*** be submitted to the [arbitrator] for resolution." *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 100-02 (4th Cir. 2012).  The court held that "the presence of [this] expansive arbitration clause, *without more*, will not suffice" to demonstrate "clear and unmistakable" intent.  *Id.* at 102 (emphasis added).  In contrast, Relators' Agreements contain a broad, "all disputes clause" and incorporate AAA Rule R-7, providing that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction . . . ."  *See* Ex. 26 (AAA Rules).[36]

### B.   The Agreements' Arbitral Procedures Do Not Prevent Vindication of Statutory Rights, Nor Are They Unconscionable

Relators contend that the Independent Contractor Service Agreement ("ICSA") Arbitration Provision contains five unconscionable terms that prevent them from vindicating their statutory rights, rendering it unenforceable.  Assuming, *arguendo*, that they are correct – and they are not – the proper result would be for the arbitrator to sever the offending provisions rather than invalidate the entire arbitration agreement.  *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 292 (4th Cir. 2007) (directing lower court to conduct severability analysis, citing cases).[37]  This is especially so given that the ICSAs include severability clauses (§§ 18.6, 20.4),

---

[36]  Relators' argument that their Agreements do not incorporate Rule R-7 is specious.  Clause 20.5 incorporates the "Commercial Rules;" the reference to "Expedited" simply makes clear that the supplemental "Expedited Procedures" also apply.  *See* Ex. 26 (AAA Rules), R-1(b).

[37]  *See also Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 219 (3d Cir. 2003) (severing fee-splitting provisions); *In re Checking Acct. Overdraft Litig MDL No. 2036*, 685 F.3d 1269, 1283 (11th Cir. 2012) (severing fee-shifting provision where arbitration provision could operate independently since it *incorporated AAA rules*); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003) (severing offending provisions where contract contained severability clause); *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682-83 (8th Cir. 2001) (severing provision limiting punitive damages); *Whitman v. Legal Helpers Debt Resolution, LLC*, No. 4:12-CV-00144-RBH, 2012 WL 6210591, at *2 (D.S.C. Dec. 13, 2012) (severing cost- and fee-splitting provisions;

none of the allegedly offending provisions are "essential to" the arbitration agreements, and

Relators have not demonstrated any "systematic effort" to impose upon them an "inferior forum that

works to the employer's advantage." *See Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 206 (3d Cir.

2010).[38]  Under New York law, "the appropriate remedy" when a court is faced with an

unconscionable provision in an arbitration agreement "is to sever the improper provision of the

arbitration agreement, rather than void the entire agreement . . . ." *Brady v. Williams Capital Grp.,*

*L.P.*, 64 A.D.3d 127, 137, 878 N.Y.S.2d 693, 701 (1st Dep't 2009); *Ragone v. Atl. Video at*

*Manhattan Ctr.*, 595 F.3d 115, 124-25 (2d Cir. 2010) (where party offered to waive the

enforcement of specific provisions, evaluating those agreements *as modified*).[39]

     In any event, Relators have not carried their burden of showing the terms are

unconscionable.  The attorney's fee provision (clause 20.7) that relators complain of falls *outside*

the arbitration agreement (clause 20.5) and, as such, does not render the *arbitration* agreement

---

finding severance "appropriate" where "only some of an arbitration agreement's provisions are invalid or unenforceable").

[38]  By contrast, the wholly-invalidated arbitration agreements in the cases cited by relators were so permeated with unconscionable provisions as to render arbitration a "sham system." *See, e.g.*, *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938-40 (4th Cir. 1999) (employer had sole control over panel of potential arbitrators and authority to unilaterally cancel arbitration agreement, modify rules, or expand scope of claims); *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 303 (4th Cir. 2002) (employer had exclusive control over selection of arbitrator); *Nino*, 609 F.3d at 207 (employer had unilateral power to strike more potential arbitrators than employee and agreement imposed onerous pre-filing requirements on employee only); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173 (9th Cir. 2003) (agreement applied only to claims brought by employee, imposed improper statute of limitations and granted employer unilateral power to terminate arbitration agreement or modify rules, *inter alia*); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 991 (9th Cir. 2010) (imposing numerous conditions on employee but not employer).

[39] The result is the same under North Carolina law.  *See In re Checking Account Overdraft Litig. MDL No. 2036*, 485 F. App'x 403, 406-07 (11th Cir. 2012) (applying North Carolina law and citing cases).

unconscionable.[40]  The provisions calling for expedited procedures concerning discovery, arbitrator appointment, and hearing duration – procedures mirroring the AAA Expedited Procedures to which Relators concede they agreed[41] – cannot be found unconscionable based solely on mere "speculation about difficulties that *might* arise in arbitration."[42]  The provision prescribing selection criteria for an arbitrator is not unconscionable because ACADEMI has *no power* to dictate who is on the panel of potential arbitrators – which was not the facts in the cases relied upon by Relators.[43]  Last, whether the provision requiring splitting the arbitrator's fees is unconscionable is a *case-by-case* inquiry focused on "the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims."  *Bradford v Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001) (declining to adopt a general rule barring fee-splitting provisions).  Relators have not alleged, let alone proven, that prohibitive costs (compared to civil litigation) are likely here.  *See also Brady*, 64 A.D.3d at 133, 878 N.Y.S.2d at 698 (quoting *Bradford*, 238 F.3d at 556).

---

[40]  *See In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d at 1283 (finding a similar fee-shifting provision unconscionable but severing it since arbitration agreement did not reference it and was not dependent upon it).

[41]  *Compare* ICSA Cl. 20.5 (limiting discovery to exchange of exhibits five days before hearing) *with* AAA Rule E-5 (exchange of exhibits two days before hearing); *compare* ICSA Cl. 20.5 (hearing within 30 days of arbitrator appointment) *with* AAA Rule E-7 (same); *compare* ICSA Cl. 20.5 (hearing limited to one day) *with* AAA Rule E-8 (hearing limited to one day unless good cause shown).

[42]  *In re Cotton Yarn*, 505 F.3d at 286-87.  Relators assert the procedures are "restrictive," "ridiculous," and "arbitrary" because of the "complexity of the case," but fail to substantiate why they are inadequate for a simple retaliation suit.  The Supreme Court has rejected challenges to expedited discovery procedures where—as here—there has been no showing that the prescribed procedures are inadequate to permit a fair presentation of the claims.  *See Gilmer*, 500 U.S. at 31.

[43]  *Cf. Murray*, 289 F.3d at 303 (invalidating arbitration agreement that placed *exclusive control* over selection of sole arbitrator with employer); *Hooters*, 173 F.3d at 938-39 (same).  By contrast, here the parties may select an arbitrator from a neutral AAA panel.

**CONCLUSION**

For each of the foregoing reasons and those in its opening memorandum, this Court should grant ACADEMI's motion.

Dated:  January 10, 2013                 Respectfully submitted,

  /s/ David W. O'Brien
David W. O'Brien (VSB # 14924)
Richard L. Beizer (VSB # 02646)
Brian T. McLaughlin (VSB # 71258)

*Counsel for Defendant*

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
P:  202-624-2500
F:  202-628-5116
E:  dobrien@crowell.com
E:  rbeizer@crowell.com
E:  bmclaughlin@crowell.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of January 2013, I electronically filed the foregoing

Reply in Support of Defendant ACADEMI's Omnibus Motion to Dismiss Relators' Fraud

Claims and Stay Relators' Retaliation Claims with the Clerk of Court using the CM/ECF system,

which will send a notification to the registered participants as identified on the Notice of

Electronic Filing (NEF).


      /s/ David W. O'Brien

David W. O'Brien (VSB # 14924)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
P:  202-624-2500
F:  202-628-5116
E:  dobrien@crowell.com

*Counsel for defendant*