**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MAR 2 9 2013

UNITED STATES OF AMERICA ex )
rel. Beauchamp and Shepherd, )
    Plaintiff, )
                )         **Case No. 1:11cv371**
      v. )
                )
ACADEMI TRAINING CENTER, INC., )
    Defendant. )

## MEMORANDUM OPINION

In this False Claims Act ("FCA")[1] case, relators, in addition to the now-dismissed false claims allegations,[2] also allege that defendant retaliated against them, in violation of 31 U.S.C. § 3730(h), for their participation in a previous FCA case.  Defendant now seeks to stay proceedings on these retaliation allegations to permit arbitration pursuant to the Federal Arbitration Act ("FAA").[3]  Relators oppose this motion, arguing that certain provisions in the contract in issue and the arbitration clause are unconscionable and therefore, unenforceable. Defendant argues that the question of arbitrability has been delegated to the arbitrator by the arbitration agreement's incorporation of the American Arbitration Association ("AAA") Commercial Arbitration Rules (Expedited).  Thus, this case presents the following question under the FAA:

---

[1] 31 U.S.C. §§ 3729–33.

[2] *See United States ex rel. Beauchamp v. Academi Training Center, Inc.*, --- F.Supp.2d ---, No. 1:11cv371 (E.D.Va. Mar. 22, 2013) (Order & Mem. Op.).

[3] 9 U.S.C. §§ 1 *et seq.*

– 1 –

Whether the incorporation of the AAA Commercial Arbitration Rules (Expedited) in an arbitration agreement is sufficiently "'clear and unmistakable' language evincing an intent to arbitrate arbitrability."[4]

For the reasons that follow, the arbitration clause's incorporation of the AAA Commercial Arbitration Rules (Expedited) is a "clear and unmistakable" delegation of arbitrability to the arbitrator. It follows that the question of the arbitrability of relators' retaliation claims is, at least in the first instance, for the arbitrator to decide. Accordingly, defendant's motion to stay pending arbitration must be granted.

## I.[5]

### A.

Relator Lyle Beauchamp, a Montana resident, was employed by Academi Training Center, Inc. ("Academi") as an independent contractor on government contracts between Academi and the United States from August 2004 until May 9, 2011. Relator Warren Shepherd has been employed by Academi as an independent contractor on government contracts since 2004. Defendant Academi is a private security contractor with a principal place of business in Arlington, Virginia.[6] Academi provides a variety of services, including specialized training and, particularly pertinent here, protective security services in high risk environments, such as Iraq and Afghanistan.

Prior to joining Academi, Beauchamp spent 17 years in local and federal law enforcement. For 15 years, he served as a police officer with the Minneapolis Police Department

---

[4] *Peabody Holding Co., LLC v. United Mine Workers of America*, 665 F.3d 96, 99 (4th Cir. 2012).

[5] The facts presented here are derived chiefly from the Second Amended Complaint.

[6] The pleadings do not identify Academi's place of incorporation. Academi's predecessors in interest include: U.S. Training Center, Inc.; Xe Services, LLC; and, Blackwater Worldwide. For ease of reference, Academi's predecessors in interest are simply referred to as Academi.

and following this employment, he served as a Federal Air Marshal. In August 2004, Beauchamp joined Academi as an independent contractor. Following the completion of training, Beauchamp deployed to Iraq as a member of an Academi advance survey team that assessed venues for security risks prior to visits by various United States Department of State ("State Department") officials. In September 2005, Academi promoted Beauchamp to tactical commander of a protective detail assigned to the United States Ambassador's residence in Iraq.

Thereafter, following a five month leave of absence, Beauchamp was deployed to Afghanistan in December 2006. Less than a year later, in October 2007, Academi promoted Beauchamp to Operations Security Specialist, and assigned him to the Operations Center in Kabul, Afghanistan, where he was responsible for coordinating Academi security details operating in and around Kabul. In May 2008, Academi again promoted Beauchamp, this time to the position of Operations Chief. As Operations Chief, Beauchamp assigned missions and met with dignitaries. While Operations Chief, Beauchamp claims he discovered that Academi was improperly billing Beauchamp's services to the State Department. In February 2009, Academi reassigned Beauchamp to a defensive marksman position ("DDM") on a protective services team.

At some point in early 2011, Beauchamp agreed to testify in *United States ex rel. Davis v. U.S. Training Center, Inc.*, No. 1:08cv1244 (E.D. Va.), an action alleging that U.S. Training Center, Inc.—Academi's predecessor in interest—had submitted false and fraudulent claims to the government. Beauchamp's testimony ostensibly concerned his knowledge of U.S. Training Center's submission of false and fraudulent claims to the United States. On March 25, 2011, an Academi Vice President, Anthony Valusek, asked Beauchamp whether he anticipated testifying in the *Davis* case. Following this conversation, Beauchamp alleges he was shunned by other

– 3 –

Academi personnel in Afghanistan. Shortly thereafter, on May 9, 2011, Academi terminated Beauchamp and sent him back to the United States. Since his termination in 2011, Beauchamp alleges that he has been unable to obtain employment from other private security companies because he has been placed on a State Department "Do Not Use" list.

Relator Shepherd served in the United States Marine Corps from 1983 to 1988. Following his honorable discharge, Shepherd worked as a North Carolina State Highway Patrol trooper for 16 years. After retiring from the North Carolina State Highway Patrol, Shepherd joined Academi as a contractor working on protective services details. From March 2006 until April 2009, Shepherd deployed to Iraq, where, as a contractor for Academi, he provided security services for the State Department. In September 2007, after a little more than a year in Iraq, Academi promoted Shepherd to the position of Shift Leader of a protective services team. Following that promotion, Shepherd served as Shift Leader in Iraq on three different protective services teams. In 2009, Academi relocated Shepherd to its base in Afghanistan. While in Afghanistan, Shepherd served as Shift Leader on two protective services teams.

In early 2011, Shepherd agreed to testify in the *Davis* action about his knowledge of Academi's alleged fraudulent billing activities. Shepherd alleges that once Academi learned in March 2011 that he was planning to testify in the *Davis* case, it retaliated against him by: (i) creating a hostile work environment, (ii) permitting him to work only in a protective services specialist position instead of the higher paying Shift Leader position, and (iii) giving him negative performance reviews.

## B.

At the time of relators' putative protected activity, both were independent contractors with Academi. Their relationship with Academi as independent contractors was governed by

essentially identical Independent Contractor Service Agreements ("ICSA"), which they signed periodically over the course of their contracting relationship with Academi. Beauchamp entered into the ICSA pertinent to his retaliation claim on October 13, 2009 and Shepherd entered into the ICSA pertinent to his retaliation claim on October 29, 2009. Both ICSA's contain identical arbitration clauses providing, in pertinent part, as follows:

> The parties to this Agreement . . . agree that any dispute, suit, action or proceeding relating to, arising out of, or with respect to this Agreement or the subject matter thereof that cannot be resolved by negotiation or mediation within thirty (30) days will be resolved exclusively by binding confidential arbitration under the Commercial Rules (Expedited) of the American Arbitration Association (AAA) then in effect. Arbitration will take place in Washington, D.C. before a sole arbitrator to be selected in accordance with the AAA Rules.

ICSA, ¶ 20.5. In addition to this agreement to arbitrate disputes arising out of or relating to the ICSA, the arbitration clause also includes five significant restrictions or limitations on the arbitration process. First, the arbitration clause purports to restrict who may serve as an arbitrator, excluding former judges and persons without at least 15 years experience in areas of law other than litigation.[7] Second, the arbitration clause restricts the discovery process, providing that there will be no discovery in the arbitration, other than a requirement that each party submit any written evidence it plans to use in the arbitration to the other side, five days before the hearing.[8] Third, the arbitration clause imposes a timeline for initiating and conducting the arbitration hearing, requiring that within 30 days of the appointment of the arbitrator, an

---

[7] "To ensure that the arbitration is conducted fairly, expeditiously and as a commercial alternative to litigation, any arbitrator appointed by the AAA in lieu of agreement by the parties shall not be a former judge and shall have at least fifteen (15) years experience in an area of law other than litigation." ICSA, ¶ 20.5.

[8] "There shall be no discovery allowed in the arbitration, except that each party shall provide to the other five (5) days in advance of the hearing the written evidence upon which it intends to rely." ICSA, ¶ 20.5.

arbitration hearing must be held.[9]  The arbitration hearing is limited to one day, and the arbitrator

must issue a reasoned award within seven days of the hearing.  Fourth, the arbitration clause

requires the parties to the arbitration to split the initial costs of the arbitration, and a party's

failure to pay its share will result in a default award.[10]  Finally, the arbitration clause awards

costs and attorneys' fees to the prevailing party.[11]

 In addition to the arbitration clause, the ICSAs contain two other clauses pertinent here.

First, the ICSAs contain a severability clause, which provides that any provision that is illegal, or

otherwise rendered inoperative, may be severed.[12]  Second, the ICSAs contain a 'legal expenses'

clause that awards attorneys' fees and costs to Academi regardless of who prevails at trial or in

arbitration.[13]

 Each relator signed his ICSA and initialed each page of the agreement.  In addition, each

relator separately initialed ¶ 20.5, the arbitration clause, and ¶ 20.6, a waiver of a jury trial.

---

[9] "The arbitration hearing shall be conducted within thirty (30) days of the appointment of the arbitrator, who shall be appointed only if he/she agrees to conduct such hearing within thirty (30) days and to issue a reasoned award within seven (7) days of the conclusion of the hearing.  The arbitration shall last no longer than one (1) day."  ICSA, ¶ 20.5.

[10] "If either party fails or refuses to pay its share of any fee due to or advance requested by the AAA or the arbitrator, a default award shall be rendered against such party of the relief requested by the other party."  ICSA, ¶ 20.5.

[11] "The award shall include an award in favor of the prevailing party of actual costs and attorneys' fees, including filing and arbitration fees."  ICSA, ¶ 20.5.

[12] "If any provision of this Agreement is rendered inoperative or illegal by operation of law or otherwise, all other provisions contained herein shall remain in full force and effect, and in such cases the principle of severability shall govern."  ICSA, ¶ 20.4.

[13] "In the event the Company is required to take action against Contractor to enforce this Agreement, or to arbitrate or defend an action brought by Contractor, the Company shall be reimbursed by Contractor for such costs as may be incurred in such action, including any appeal therefrom, including reasonable attorneys' fees, costs and other fees."  ICSA, ¶ 20.7.

## II.

The FAA reflects a "'liberal federal policy favoring arbitration agreements.'" *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). In effect, the FAA reverses "the longstanding judicial hostility to arbitration agreements . . . [and places] arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). Thus, if parties have entered "into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms[.]" *Murray v. United Food & Comm'l Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002) (internal citations omitted).

Not infrequently, parties, as here, dispute whether arbitration is required, the so-called arbitrability dispute. A court resolving an arbitrability dispute must engage in a two-step inquiry. *See Peabody Holding*, 665 F.3d at 101. First, the court must "determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court." *Id.* (emphasis in the original). Second, only if the court determines that the court "is the proper forum in which to adjudicate arbitrability" does the court "then decide *whether* the dispute is, in fact, arbitrable." *Id.* (emphasis in original). Despite the general presumption in favor of arbitration, the "presumption is not applied 'to resolve questions of the arbitrability of arbitrability issues themselves.'" *Id.* at 102 (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 328–29 (4th Cir. 1999)). Instead, "the intent of the contracting parties guides [the] analysis," and an agreement to arbitrate arbitrability "must . . . 'clearly and unmistakably' provide that the arbitrator shall determine what disputes the

parties agreed to arbitrate." *Id.* (quoting *Carson*, 175 F.3d at 329).[14] The Fourth Circuit has emphasized that this "'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Id.* Thus, "an arbitration clause 'committ[ing] all interpretive disputes relating to or arising out of the agreement' does not satisfy the 'clear and unmistakable' test." *Id.* Yet, the "'clear and unmistakable' test applies only 'to the parties' *manifestation of intent*, not the agreement's *validity*.'" *Id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2778 n.1 (2010)) (emphasis in original).

### III.

The "clear and unmistakable" test is plainly a high and exacting standard, and it is equally plain that it is met in this case. To begin with, the arbitration clauses in both ICSAs expansively provide that "any dispute, suit, action or proceeding relating to, arising out of, or with respect to [the ICSA] . . . will be resolved exclusively by binding confidential arbitration." ICSA, ¶ 20.5. To be sure, the expansive breadth of the arbitration clause, by itself, does not do the trick; it does not, by itself, meet the exacting "clear and unmistakable" standard. *See Peabody Holding*, 665 F.3d at 102 ("the presence of an expansive arbitration clause, without more, will not suffice"). To use a familiar sports metaphor, the clause's breadth takes the ball to the red zone, but not over the goal line. What carries the arbitrability ball over the goal line is the clear and explicit requirement in both ICSAs that arbitration must be conducted "under the Commercial Rules (Expedited) of the [AAA] then in effect." ICSA, ¶ 20.5. Because the Commercial Rules (Expedited) incorporate all the AAA Commercial Rules not in conflict with

---

[14] *See also AT&T Techs., Inc. v. Comm'n Workers of Amer.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

the Expedited Procedures,[15]  the reference to the Commercial Rules (Expedited) includes Rule

7(a) of the AAA Commercial Rules, as this rule does not conflict with the Expedited Procedures.

And Rule 7(a) provides that "[t]he arbitrator shall have the power to rule on his or her own

jurisdiction, including any objections with respect to the existence, scope or validity of the

arbitration agreement."[16]  Touchdown!  Rule 7 of the AAA Commercial Rules "clearly and

unmistakably" delegates to the arbitrator the question of arbitrability and thus, the ICSA's

arbitration clause, by referencing the AAA Commercial Rules, "clearly and unmistakably" does

the same.

        Although the Fourth Circuit has not yet addressed whether an incorporation of the AAA

Commercial Rules satisfies the "clear and unmistakable" test, the seven circuits that have

explicitly addressed this question have held "that the express adoption of these rules presents

clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc.*

*v. DynMcDermott Petroleum Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012).[17]  As the Eighth

Circuit explained,

---

[15] Rule 1(b) of the AAA Commercial Rules provides that the "Expedited Procedures shall be
applied . . . in addition to any other portion of these rules not in conflict with the Expedited
Procedures." AAA, Commercial Arbitration Rules & Mediation Procedures, 16 (June 1, 2009)
(hereinafter "AAA Commercial Rules").

[16] AAA Commercial Rules, 18.  Similarly, Rule 7(b) states that the "arbitrator shall have the
power to determine the existence or validity of a contract of which an arbitration clause forms a
part." *Id.*

[17] *See Fadal Machining Centers, LLC v. Compumachine, Inc.*, 461 F.App'x 630, 632 (9th Cir.
2011) ("[T]he language of the arbitration clause shows a clear and unmistakable intent to
delegate questions of scope to the arbitrator. . . . The clause incorporates the AAA's Commercial
Arbitration Rules, which provide that '[t]he arbitrator shall have the power to rule on his or her
own jurisdiction, including any objections with respect to the existence, scope or validity of the
arbitration agreement.'"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009)
("Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules . . .

the act of incorporating Rule 7(a) of the AAA Rules provides even clearer evidence of the parties' intent to leave the question of arbitrability to the arbitrator [than a similar incorporation of arbitration rules] because Rule 7(a) *expressly gives* the arbitrator 'the power to rule on his or her own jurisdiction.'

*Fallo*, 559 F.3d at 878. Although the Tenth Circuit has arguably held to the contrary, a close reading of that decision suggests that the court considered the breadth of the arbitration clause, but did not explicitly consider or address whether incorporation of the AAA Commercial Rules satisfied the "clear and unmistakable" test. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998).[18]  Accordingly, the conclusion that the ICSA

---

constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) ("We agree with the Second Circuit's analysis in *Contec* and likewise conclude that the 2001 Agreement, which incorporates the AAA Rules containing the same language as that in *Contec*, clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator."); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 211 (2d Cir. 2005) ("We therefore conclude that as a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, Remote Solution cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability."); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the ICC, however, Apollo agreed to be bound by Articles 8.3 and 8.4. These provisions clearly and unmistakably allow the arbitrator to determine her own jurisdiction when, as here, there exists a *prima facie* agreement to arbitrate whose continued existence and validity is being questioned."); *see also Yellow Cab Affiliation, Inc. v. New Hampshire Insur. Co.*, No. 10cv6896, 2011 WL 307617 at *4–5 (N.D. Ill. Jan. 28, 2011) (holding that "the parties have conferred on the panel of AAA arbitrators the authority to determine its own jurisdiction" by incorporating the AAA Commercial Rules); *Haire v. Smith, Currie & Hancock LLP*, No. 12–749(JDB), 2013 WL 751035 at *5 (D.D.C. Feb. 28, 2013) (holding that incorporation of the AAA Commercial Rules is a clear and unmistakable delegation of arbitrability and noting that "a recent D.C. Circuit opinion strongly suggests that the D.C. Circuit would view incorporation of the AAA Rules as satisfying the requisite standard").

[18] Thus, it is not surprising that several district courts within the Tenth Circuit recently have held that the incorporation of the AAA Commercial rules satisfies the "clear and unmistakable" test. *See Pikes Peak Nephrology Associates, P.C. v. Total Renal Care, Inc.*, No. 09cv928, 2010 WL 1348326, at *7 (D. Colo. Mar. 30, 2010) ("the parties contracted to be bound by any amendments

arbitration clause at issue "clearly and unmistakably" delegates arbitrability to the arbitrator by incorporating the AAA Commercial Rules finds firm support in the case law of sister circuits.

This does not end the analysis, as relators challenge the enforceability of the arbitration agreement on the ground that five provisions in the ICSA—some within the arbitration clause and some outside of the arbitration clause—render the arbitration agreement substantively unconscionable. Specifically, relators challenge five provisions of the ICSA and the arbitration clause as unconscionable: (i) ¶ 20.7's fee shifting provision awarding costs and attorneys' fees to Academi regardless of who prevails at trial or in arbitration, (ii) the arbitration clause provision limiting discovery and requiring arbitration to begin within 30 days, (iii) the arbitration clause provision restricting the arbitration hearing to one day, (iv) the arbitration clause provision prohibiting persons with prior judicial or substantial litigation experience from serving as an arbitrator, and (v) the arbitration clause provision requiring the parties to split any fee or advance required by the arbitrator, and providing that the failure to pay such fee or advance results in default.[19] Whether these provisions are unconscionable is neither clear, nor relevant, for

---

to the AAA Rules[;] [a]ccordingly, the Court finds that the parties acquiesced to the arbitrator's jurisdiction on matters of arbitrability"); *Chen v. Dillard's Inc.*, No. 12cv2366CM, 2012 WL 4127958 at *2, n.1 (D. Kan. Sept. 19, 2012) ("The incorporation of [the AAA Employment Arbitration Rules] is additional clear and unmistakable evidence that the parties intended for the arbitrator to decide threshold issues of arbitrability.").

[19] It is less than clear that some of these provisions are substantively unconscionable. For example, the requirement that the arbitrator appointed by the AAA must not be a judge or an experienced litigator does not mean that the arbitrator will be unqualified, as the arbitration clause requires that the appointed arbitrator have at least 15 years of legal experience. Unlike the arbitrator selection procedure at issue in *Murray*, 289 F.3d at 303, in which the employer created the list of arbitrators from which the employee could choose, here the parties select from an identical "list of five proposed arbitrators drawn from [AAA's] National Roster[.]" Rule E-4, AAA Commercial Rules. And it is unclear how requiring the parties to select from a list of neutral arbitrators qualified by the AAA is unconscionable. Likewise, the advance payment of the costs and fees associated with arbitration is required by the AAA Commercial Rules. *See*

significantly, relators do not challenge the delegation of arbitrability to the arbitrator as

unconscionable and the Supreme Court has recently made clear that unless the party challenging

the enforcement of the arbitration agreement challenged the delegation provision specifically,

> [the courts] must treat [the delegation provision] as valid under § 2 [of the FAA],
> and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the
> [arbitration agreement] as a whole for the arbitrator.

*Rent-A-Center*, 130 S.Ct. at 2779.

The facts of *Rent-A-Center* are instructive. There, the plaintiff opposing arbitration

argued that various provisions of the arbitration agreement, such as limited discovery and unfair

fee-splitting, rendered the agreement unconscionable. *Id.* at 2780. But, the plaintiff there, like

relators here, challenged only the arbitration agreement as a whole, and therefore, the Supreme

Court held that because the delegation provision itself was not specifically challenged as

---

Rule 49, AAA Commercial Rules ("The filing fee shall be advanced by the party or parties
making a claim or counterclaim[.]"); Rule 50, AAA Commercial Rules ("[a]ll other expenses of
the arbitration, including required travel and other expenses of the arbitrator, AAA
representatives, and any witness and the cost of any proof produced at the direct request of the
arbitrator, shall be borne equally by the parties"); Rule 54, AAA Commercial Rules ("If
arbitrator compensation or administrative charges have not been paid in full, the AAA may so
inform the parties in order that one of them may advance the required payment. If such payments
are not made, the arbitrator may order the suspension or termination of the proceedings."). And
these fees are set by the AAA. *See* Rule E-10, AAA Commercial Rules ("Arbitrators will
receive compensation at a rate to be suggested by the AAA regional office."). Accordingly, the
objection to the advanced payment of fees would apply to any arbitration clause governed by the
AAA Commercial Rules. Moreover, the one provision that is likely to be substantively
unconscionable, ¶ 20.7's fee-shifting provision requiring the contractor to pay for Academi's
attorneys' fees and costs regardless of who prevails in a trial or arbitration, conflicts with the fee
provision located in the arbitration clause itself (¶ 20.5), which awards fees and costs to the
prevailing party. Thus, the unconscionability objection with respect to attorneys' fees is in
essence directed at the ICSA as a whole, and not specifically to the arbitration clause.
    More importantly, the ICSA provides for severability. Paragraph 20.4 states, "If any
provision of this Agreement is rendered inoperative or illegal by operation of law or otherwise,
all other provisions contained herein shall remain in full force and effect, and in such cases the
principle of severability shall govern." Accordingly, if the arbitrator finds that certain provisions
of the ICSA are unconscionable, illegal, or inoperative, it appears that ¶ 20.4 permits the
arbitrator to sever those provisions from the ICSA.

unconscionable, the decision as to the unconscionability of the remainder of the arbitration clause was delegated to the arbitrator. *Id.*[20] After *Rent-A-Center*, therefore, the presence of a delegation provision narrows a court's role to determining whether there is a valid delegation agreement, and if there is such an agreement, a court must then "enforce the delegation provision by compelling arbitration and reserving for the arbitrator issues that implicate the agreement to arbitrate as a whole[.]" *In re Toyota Motor Corp.*, 838 F.Supp.2d 967, 982 (C.D. Cal. 2012).[21] Relators here, like the *Rent-A-Center* plaintiff, have not specifically challenged the delegation of arbitrability to the arbitrator as unconscionable or otherwise invalid, and accordingly, that delegation must be enforced without regard to relators' unconscionability challenges to other provisions of the arbitration agreements and the ICSAs.

In summary, the incorporation of the AAA Commercial Rules (Expedited) is a "clear and unmistakable" delegation of arbitrability to the arbitrator. In addition, relators' unconscionability challenge to the validity of the arbitration agreement does not alter this conclusion, as relators have not specifically attacked the delegation of arbitrability to the arbitrator as unconscionable or otherwise invalid. Accordingly, the arbitrability of this dispute is for the arbitrator to decide.

---

[20] *See also In re Checking Account Overdraft Litigation MDL No. 2036*, 674 F.3d 1252, 1256 (11th Cir. 2012) ("A delegation provision is severable from the rest of the arbitration agreement and must be challenged specifically.") (internal quotation marks omitted); *Wootten v. Fisher Invest., Inc.*, 688 F.3d 487, 492 (8th Cir. 2012) (holding that the "parties have committed to the arbitrator the determination of whether the [Contract's] arbitration provisions are valid").

[21] *See also Meena Enterprises, Inc. v. Mail Boxes Etc.*, No. DKC 12–1360, 2012 WL 4863695 at *6 (D.Md. Oct. 11, 2012) ("under *Rent–A–Center*, the delegation clauses must be enforced pursuant to the FAA because Plaintiffs' unconscionability arguments are not specifically directed to the provisions").

− 13 −

Relators offer several arguments against this result, none of which is persuasive. First, relators argue that the Fourth Circuit's "clear and unmistakable" standard is exacting, and the incorporation of the AAA Commercial Rules fails to meet that standard. This argument is unpersuasive. All the circuits apply the same "clear and unmistakable" standard to such issues—the standard comes from *AT & T Techs., Inc. v. Communications Workers of Amer.*, 475 U.S. 643, 649 (1986)—and the circuits that have explicitly addressed the incorporation of the AAA Commercial Rules have all held that such an incorporation is a "clear and unmistakable" delegation of arbitrability to the arbitrator. The decisions of district courts in the Fourth Circuit cited by relators that have held to the contrary are neither controlling nor persuasive. For example, in *Bayer Cropscience AG v. Dow Agrosciences LLC*, No. 2:12cv47, 2012 WL 2878495 (E.D. Va. July 13, 2012), the court acknowledged the great weight of sister circuit authority, but declined to follow it because "the threshold question of arbitrability when an arbitration clause invokes the [arbitration] rules remains unsettled in this Circuit." *Bayer Cropscience*, 2012 WL 2878495 at *10.[22] The court then went on to explain that "on the authority of *Virginia Carolina Tools*,[23] the Court finds that it may determine this threshold issue of arbitrability." *Id.* The short

---

[22] *See also Diesselhorst v. Munsey Building, L.L.L.P.*, No. Civ. AMD 04-3302, 2005 WL 327532 at *4 (D.Md. Feb. 9, 2005) ("Simply by agreeing that any matters sent to arbitration would be governed by the AAA Rules, Diesselhorst and Munsey did not clearly and unmistakably demonstrate an intent to have an arbitrator determine the question of arbitrability."); *Martek Biosciences Corp. v. Zuccaro*, No. Civ. AMD 04-3349, 2004 WL 2980741, at *3 (D.Md. Dec. 23, 2004) (holding that "the specification in the arbitration clause that the rules of JAMS [Judicial Arbitration and Mediation Services] apply to matters submitted to arbitration does not clearly and unmistakably demonstrate an intent to have an arbitrator of JAMS determine the question of arbitrability"). Notably, these two cases were decided before the majority of sister circuits had weighed in on this issue.

[23] This case stands for the general rule "that whether particular disputes are arbitrable under a contractual arbitration clause are questions for the court to decide[.]" *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 117 (4th Cir. 1993).

answer to this is that there is no sound basis for rejecting the majority rule—adopted by seven circuits, and explicitly rejected by none—that the incorporation of the AAA Commercial Rules satisfies the "clear and unmistakable" test.[24]

Second, relators argue that the AAA Commercial Rules (Expedited) do not contain Rule 7. Yet, the AAA Commercial Rules (Expedited) are not separate from the AAA Commercial Rules. As AAA Commercial Rule 1(b) makes clear, the "Expedited Procedures shall be applied . . . *in addition to* any other portion of these rules not in conflict with the Expedited Procedures." (emphasis added). Rule 7 does not conflict with any of the Expedited Procedures and accordingly, it applies in this case. Moreover, the case cited by relators, *Perez v. Globe Airport Security Services, Inc.*, 253 F.3d 1280, 1286 (11th Cir. 2001), *vacated on other grounds by* 294 F.3d 1275 (11th Cir. 2002), is inapposite. In *Perez*, the Eleventh Circuit held that it was improper to import a rule from the AAA Employment Dispute Rules in a contract governed by the AAA Labor Dispute Rules. Unlike the Expedited Procedures at issue here, the Employment Dispute Rules and the Labor Dispute Rules are wholly separate sets of rules, and thus the defendant there could not rely on a Rule in the AAA Employment Dispute Rules in a dispute that the parties agreed would be governed by the AAA Labor Dispute Rules. *See id.*

---

[24] Relators also argue that North Carolina state courts have held that the incorporation of the AAA Commercial Rules is not a "clear and unmistakable" delegation of arbitrability. Although the interpretation of the ICSA is a question of state contract law, the "clear and unmistakable" test is a matter of federal law under the FAA. *See Peabody Holding*, 665 F.3d at 102. Moreover, the North Carolina case, *Green v. Short*, No. 06CVS22085, 2007 WL 2570821 (N.C. Super. Ct. Mar. 9, 2007), is readily distinguishable. There, the contract identified "the AAA commercial rules as the default mechanism for arbitration *unless the parties reach some other agreement*." *Id.* at *5 n.4 (emphasis added). Thus, the contract in issue in *Green* did not specifically require the application of the AAA Commercial Rules.

**IV.**

The arbitration provision of the ICSA, by incorporating the AAA Commercial Rules (Expedited), has "clearly and unmistakably" delegated arbitrability to the arbitrator. Accordingly, relators' retaliation claims must be referred to arbitration and this matter stayed pending completion of the arbitration proceedings pursuant to 9 U.S.C. § 3.

An appropriate Order will issue.

March 29, 2013

                              /s/
            _____
            T. S. Ellis, III
            United States District Judge

– 16 –